[No. 9008–2–II.  Division Two.  October 17, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. ALFRED KENT POULSEN, *Appellant.*

*James J. Sowder,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Richard A. Melnick, Deputy,* for respondent.

REED, J.—Alfred Kent Poulsen appeals his convictions of second degree assault. Poulsen presents three issues: (1) whether the trial court erred in denying his motion for an order appointing a psychologist at state expense to assist in establishing the defense of diminished capacity; (2) whether the trial court erred in refusing his instruction on that defense; and (3) whether it was error to impose a sentence beyond the standard range as set by the Sentencing Reform Act of 1981. We reverse.

Poulsen became enraged by his mother's refusal to allow him to make long distance telephone calls and struck her in the face with his fist, knocking her to the floor. He then continued to hit and kick her while she lay unconscious, or near unconsciousness. Poulsen's father intervened and also was assaulted. As a result, both parents were injured, with the mother requiring hospitalization.

Six days before trial, and again on the day of trial, the indigent Poulsen made his motion for the appointment of a psychologist at state expense. The motion was based on information pertaining to his mental condition that only recently had been gained from his parents. Both defense counsel and the prosecutor were present at the meeting with the parents, who had previously been out of the jurisdiction for an extended period of time.

Relaying the information provided by Poulsen's parents, defense counsel and the prosecutor told the judge that Poulsen had been struck on the head with a gun at age 16 and had again been struck on the head at least three or

four times after that. The judge was also informed that Poulsen would at times clutch his head while complaining of headaches and then "explode" or "flip out" for no apparent reason. It was further related that a psychiatric evaluation had been done on Poulsen when he was in prison and that Poulsen's father recalled that the evaluation used the term "schizophrenia". The judge denied defense counsel time to obtain a copy of the evaluation. The judge was also informed of the father's opinion that Poulsen might have a brain tumor or other physical disorder which affected his behavior.

Based on this information, Poulsen argued that appointment of a psychologist was necessary to determine whether he had an organic brain disorder caused by physical abuse that rendered him incapable of forming the specific intent required to commit second degree assault. The State contends that Poulsen was attempting to argue that intoxication rendered him unable to form the intent to commit the assault. This is clearly incorrect: Poulsen explicitly stated he was not relying on intoxication. Although he and his parents had been drinking before the occurrence, intoxication was discussed only in the context of it being a symptom or manifestation of his underlying brain disorder. Poulsen emphasized several times that he was claiming the defense of diminished capacity. Both motions were denied. Defendant's requested instruction on diminished capacity was refused, and he was convicted by a jury.

■ Diminished capacity has been termed the inability to form the "specific intent" required to commit the crime charged, and evidence of diminished capacity is admissible if it "tends logically and by reasonable inference to prove or disprove that a defendant was capable of forming a required specific intent." *State v. Ferrick*, 81 Wn.2d 942, 944, 506 P.2d 860, *cert. denied*, 414 U.S. 1094 (1973). Poulsen was charged with second degree assault pursuant to RCW 9A.36.020(1)(b), which requires that one act "knowingly". Diminished capacity may be asserted as a defense to the knowledge element—mental state—which has replaced

the traditional concept of specific intent. *See State v. Edmon,* 28 Wn. App. 98, 103–04, 621 P.2d 1310, *review denied,* 95 Wn.2d 1019 (1981). *See also State v. Simmons,* 30 Wn. App. 432, 435, 635 P.2d 745 (1981) (intoxication as defense to charge of knowingly taking a motor vehicle).

In deciding whether it was error to deny Poulsen's motions for a psychologist to assist in establishing the defense of diminished capacity, we note that CrR 3.1(f)[1] incorporates the constitutional right of an indigent defendant to the assistance of expert witnesses. The rule requires the State to provide funds for expert witnesses only where they are *"necessary* to an adequate defense." *State v. Kelly,* 102 Wn.2d 188, 200–01, 685 P.2d 564 (1984). *See also State v. Niemczyk,* 31 Wn. App. 803, 805, 644 P.2d 759 (1982); *State v. Dickamore,* 22 Wn. App. 851, 854, 592 P.2d 681 (1979). Thus, the question becomes whether a psychologist was in fact necessary to Poulsen's defense.

In *Ake v. Oklahoma,* 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985), the United States Supreme Court considered an indigent defendant's need for psychiatric assistance in presenting a defense and established a limited right to court–appointed psychiatric assistance grounded on the Fourteenth Amendment due process guaranty of fundamental fairness. The defendant in *Ake* was attempting to put forth an insanity defense and the opinion is accordingly framed mainly in this context. However, the opinion refers at several points to the broader heading of a defendant's "mental condition." 470 U.S. at 78–83. Speaking in terms of "sanity" but not precluding the applicability of its rationale to the broader scope of a defendant's "mental condition," the Court said:

---

[1]CrR 3.1(f), before amendment effective September 1, 1986, read in pertinent part as follows:

"**Services Other Than Counsel.** Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them by a motion. Upon finding that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant."

When the defendant is able to make an *ex parte* threshold showing to the trial court that his sanity is likely to be a significant factor in his defense, the need for the assistance of a psychiatrist is readily apparent. It is in such cases that a defense may be devastated by the absence of a psychiatric examination and testimony; with such assistance, the defendant might have a reasonable chance of success.

*Ake v. Oklahoma,* 470 U.S. at 82–83.

We interpret *Ake* and CrR 3.1(f) to require the safeguarding of the rights of indigent defendants whose "mental condition" is likely to be a significant factor at trial, with insanity being merely one type of "mental condition" necessitating that protection. Thus, because diminished capacity is a type of mental condition relevant to a defendant's capability to form the required specific intent or mental state, *State v. Ferrick, supra,* we conclude that *Ake* must also apply to the mental condition of diminished capacity. This result is mandated by the underlying purpose of promoting equal justice.

The *Ake* Court reemphasized that central importance must be accorded to the belief that "justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." *Ake v. Oklahoma,* 470 U.S. at 76. To deny the defense of diminished capacity simply because a defendant cannot afford the services necessary to establish that defense would be to deny equal justice and meaningful participation.

This conclusion is supported by *United States v. Sloan,* 776 F.2d 926 (10th Cir. 1985), where the Tenth Circuit, relying on *Ake* and 18 U.S.C. § 3006A(e)(1), the federal counterpart of CrR 3.1(f), held that appointment of a psychiatric expert is required where a defendant's "mental condition"—lack of capacity to form a specific criminal intent—will be a significant factor at trial. The court said:

[W]hen an indigent accused makes a clear showing to the trial judge that his mental condition will be a significant factor at trial, the judge has a clear duty upon request to

appoint a psychiatric expert to assist in the defense of the case.

*United States v. Sloan,* 776 F.2d at 929. For the above reasons we find this rule persuasive and therefore adopt it as our holding in this case. *See also United States v. Flynt,* 756 F.2d 1352 (9th Cir. 1985) (error to refuse continuance to obtain expert psychiatric witnesses to support a defense of lack of mental capacity to commit criminal contempt).

We appreciate the trial court's concern with delaying defendant's trial and agree with its opinion that mere bald assertions of counsel, without more, do not satisfy the threshold requirement of a clear showing. Here, however, Poulsen's *only* defense was diminished capacity, and substantial, largely uncontradicted evidence of his injuries and bizarre conduct was presented to the judge before trial.[2] The judge was informed that Poulsen had sustained numerous head injuries, suffered from severe headaches and exhibited irrational behavioral changes, including fits of uncontrollable rage, particularly when he had ingested alcohol. The State did not seriously dispute these facts. Poulsen thus made a clear showing that his mental condition would be a *significant factor* at trial. The denial of his motion for a psychologist to assist in establishing his defense was error.

■ As for the second issue, diminished capacity instructions must be given where there is:

[S]ubstantial evidence of such a condition and such evidence logically and reasonably connects the defendant's alleged mental condition with the inability to possess the required level of culpability to commit the crime charged.

*State v. Griffin,* 100 Wn.2d 417, 419, 670 P.2d 265 (1983). *See State v. Ferrick, supra.* We need not decide if, *despite the absence of expert opinion in this case,* the requisite

---

[2]Assuming, without deciding, that in some instances the existence of a mental condition or disease—such as a brain tumor or "organic brain syndrome"—and its causal connection with an inability to form or possess the requisite mental state must be established by competent medical testimony, the expert's services would not be simply a "significant factor": They would be indispensable.

mental condition and consequent inability to form the necessary mental state were established sufficiently to mandate the giving of such an instruction. See footnote 2. Poulsen's proposed instruction[3] was simply a dissertation on the relevance and admissibility of evidence of such a condition—areas reserved for the judge—and would not have informed the jury as to the proper use of such evidence. *See, e.g.,* WPIC 18.10, *Intoxication—Defense.* Further, the instruction incorrectly uses the term "specific intent", instead of "mental state."

Given our holding, we decline to consider the sentencing issue.

Reversed and remanded for appointment of a defense expert at state expense and for a new trial.

WORSWICK, C.J., and PETRICH, J., concur.

---

[3]Poulsen's proposed instruction reads as follows:

"The presence of a mental condition not amounting to criminal insanity is relevant to elements or degrees of certain crimes involving *specific intent.* Competent evidence of such a condition is admissible wherever it tends logically and by reasonable inference to prove or disprove that a Defendant was capable of forming a required *specific intent.* In order to prove diminished capacity, there must be substantial evidence of such a condition, and the evidence must logically and reasonably connect the Defendant's alleged mental condition with an asserted inability to form the required *specific intent* to commit the crime charged." (Italics ours.)