[Nos. 22015-2-I; 24882-1-I. Division One. July 16, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. JACK A. BARNES, *Appellant.*

*In the Matter of the Personal Restraint of*
JACK A. BARNES, *Petitioner.*

*Eric J. Nielsen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rebecca Roe, Deputy,* for respondent.

WINSOR, J.—Jack Barnes challenges a judgment and exceptional sentence for murder in the first degree and first degree assault. He assigns error to the trial court's denial of his pretrial motions for a continuance and a neurological

examination, and to imposition of an exceptional sentence. He also contends that the trial judge impermissibly commented on the evidence. In a pro se supplemental brief and a personal restraint petition consolidated with this appeal, Barnes makes numerous additional assignments of error. We affirm the judgment, dismiss the personal restraint petition, and remand for resentencing.

On June 13, 1987, Debbie Barnes called police and reported an assault by her husband, Jack Barnes. Police arrested Barnes, who was held in jail until June 17. While Barnes was in jail, Mrs. Barnes and the couple's two children, 5-year-old Brandi, and her younger sister, Stephanie, moved out of the family home. They temporarily stayed with Mrs. Barnes' cousin, Darcy Underwood, and Underwood's two young children.

On the morning of June 29, 1987, Underwood, Mrs. Barnes, and the four children briefly returned to the family home. Barnes, who knew they were going there, also went to the house. He arrived first. Underwood and the children arrived next. Upon their arrival, Barnes hid in a hallway closet. Mrs. Barnes then arrived.

Shortly after Mrs. Barnes' arrival, Underwood heard a scream. She investigated and found Barnes in the kitchen, sitting on Mrs. Barnes. Barnes had a knife. He grabbed Underwood and stabbed her three times before she escaped. He then stabbed Mrs. Barnes in the back at least 10 times. Barnes walked out of the house, got into his car, and drove away.

All four children were in the house when these events took place. At trial, Brandi testified that she saw Barnes jump out of the closet with a knife in his hand. She and the other children hid under a bed during the actual stabbings. Brandi explained that after Barnes left, "then I get out and cried, and mommy moved her head one time, and then she was out."

Police arrested Barnes in San Diego, California, on July 1, 1987. Barnes was charged with first degree murder and first degree attempted murder. He retained a lawyer, who

had Barnes examined by Dr. G. Christian Harris, a psychiatrist, for the purpose of pursuing a diminished capacity defense.

Barnes moved to dismiss his retained lawyer in December 1987. The trial court granted the motion, ordered that a public defender be appointed as substitute counsel, and extended expiration of Barnes' speedy trial date to January 13, 1988.[1] At that time, the court warned Barnes that any further motion for continuance would not be granted if it appeared that, by bringing the motion, Barnes was deliberately attempting to delay trial.

Ralph Hurvitz was appointed to represent Barnes. Barnes became dissatisfied with Hurvitz' efforts and on January 4, 1988, moved to be allowed to proceed pro se. The court granted his motion and ordered Hurvitz to act as Barnes' legal adviser. At the same time, Barnes moved to continue the trial date. The presiding judge declined to rule on the motion, and instead preassigned the matter to another judge to rule on all pretrial matters and preside at trial.

On January 8, a Friday, the preassigned judge heard Barnes' motions for discovery, for a continuance, and for a neurological exam. The judge learned that Barnes had just received the defense discovery notebook from Hurvitz. To enable Barnes to determine what discovery materials were already in his possession, the judge continued the discovery motions until January 12, a Tuesday. The judge also continued Barnes' motion for a neurological exam so that Hurvitz could obtain Dr. Harris' opinion as to whether "there may be an organic component" to Barnes' claimed mental problems.

On January 12, Hurvitz informed the trial court that "Dr. Harris did not think an organic component to the pathology here was likely." Consequently, the trial court denied Barnes' motion for a neurological exam. The court then made rulings on each of Barnes' discovery requests,

---

[1]The trial date had previously been extended at least two times.

granting some and denying others. Barnes next moved for a daily trial transcript. The court denied the motion, "[a]bsent a showing of some unique need". Finally, Barnes moved for a 1–week continuance, based on "the amount of material that hasn't been disclosed yet, [to] assimilate and consider my pleadings, [and] if necessary, I would have some opportunity for a follow–up investigation on it." The trial court denied Barnes' motion, explaining:

> It does not appear to me that anything that is going to be produced would effectively delay the process in any way. We'll probably be spending most of tomorrow in the process of jury selection. The State proceeds first in the presentation of their case. This case has been delayed for a substantially long period of time.
>
> . . . .
>
> There have been attorneys hired and fired. I do not intend that it be delayed further. If there is some overriding reason to do so, I would in the interests of a fair trial for yourself, I would not push you to trial. But I simply see nothing at this time which would justify a further continuance of this trial.

The trial judge and Barnes then discussed each discovery request to determine whether the additional materials sought were so critical as to warrant another trial continuance. The judge again found no basis for a continuance.

The matter proceeded to trial before a jury. Barnes' defense theories were self–defense and diminished capacity. Concerning his self–defense claim, Barnes testified that he stabbed Mrs. Barnes and Underwood because he thought they were getting guns to kill him. Concerning his diminished capacity defense, Barnes testified that he struck his head when police officer Barth assaulted him after arresting him on June 13, 1987, for the alleged assault of Mrs. Barnes. He claimed that for several months after that assault he suffered from blinding headaches, blackouts, and memory lapses. He seemingly alleged that he stabbed Mrs. Barnes and Underwood during a blackout.

While testifying about the stabbings, Barnes said: "I can only tell you that I believe they went for the guns, and I just went crazy. I don't remember the knife in my hand." The trial judge interrupted and announced:

The defendant has just stated, just a minute sir. The defendant has stated he just went crazy. I will point out to the jury there is no plea of mental irresponsibility in this case.

The jury found Barnes guilty of first degree murder and first degree assault. Barnes moved for a new trial. His motion was denied and the trial court imposed a 45–year exceptional sentence. This appeal and personal restraint petition followed.

## I

Barnes first challenges the trial court's denial of his January 12 motion for a continuance. He argues that because he did not receive any discovery until a week before trial, he was unable to properly prepare for trial.

The grant or denial of a motion for continuance is within the trial court's discretion and will not be disturbed absent a showing that the court abused its discretion and the defendant was prejudiced thereby. *State v. Kelly,* 32 Wn. App. 112, 114, 645 P.2d 1146, *review denied,* 97 Wn.2d 1037 (1982); *State v. Sutherland,* 3 Wn. App. 20, 21, 472 P.2d 584, *review denied,* 78 Wn.2d 996 (1970). Discretion is abused if it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *Coggle v. Snow,* 56 Wn. App. 499, 504–07, 784 P.2d 554 (1990).

The primary purpose of Barnes' continuance request was to obtain and review additional discovery. The trial court considered each item of discovery still forthcoming and concluded that none was sufficiently important to warrant further delay of trial. This conclusion was not untenable, particularly since at least three continuances had previously been granted in this case. To guard against abuse and to discourage motions made merely for delay, it is generally required that a stronger showing be made in support of subsequent motions for continuance. 12 R. Ferguson, Wash. Prac., *Criminal Practice and Procedure* § 1905 (1984); *see United States v. Leavitt,* 608 F.2d 1290 (9th Cir. 1979). Moreover, the trial court had previously warned Barnes that further continuances might not be

granted. Nevertheless, Barnes decided to proceed pro se just days before trial. As we said in a case in which a continuance was denied to a defendant who elected to proceed pro se on the day before trial:

> We note that [defendant] was so confident about the completeness of his own trial preparation, that he insisted on firing his retained counsel for disagreeing with him on the day before trial. If he truly had believed that his pro se defense would be crippled without a continuance, he need not have dismissed his counsel who was fully prepared to try the case.

*State v. Anderson,* 23 Wn. App. 445, 449, 597 P.2d 417 (1979).

The trial court did not err in denying Barnes' motion for continuance.

## II

Barnes next contends that the trial court abused its discretion when it refused his request for a neurological exam. He argues that the neurological exam was necessary to his diminished capacity defense.

A defendant is entitled to the assistance of an expert witness only when such services are necessary to an adequate defense. *State v. Poulsen,* 45 Wn. App. 706, 709, 726 P.2d 1036 (1986); *State v. Mines,* 35 Wn. App. 932, 935, 671 P.2d 273 (1983), *review denied,* 101 Wn.2d 1010 (1984); CrR 3.1(f). The necessity determination is left to the sound discretion of the trial court and will not be overturned on appeal absent a showing of substantial prejudice. *Mines,* 35 Wn. App. at 935.

We find no abuse of discretion here. Barnes had already undergone one psychiatric evaluation from which the psychiatrist concluded that Barnes' pathology was not likely to be related to an organic problem. Barnes' assertions of headaches and memory lapses were uncorroborated. Accordingly, the trial court could reasonably conclude that another examination was not necessary.[2]

---

[2]*State v. Poulsen, supra,* upon which Barnes relies, is distinguishable. The *Poulsen* court held that it was an abuse of discretion to deny the defendant any psychological examination when the only defense was diminished capacity, and

## III

Barnes next contends that the trial judge committed constitutional error when he advised the jury that "there is no plea of mental irresponsibility in this case." Barnes argues that the jury could reasonably have inferred that the judge was commenting on the merits of his diminished capacity defense,[3] and that he was therefore denied a fair trial.

Article 4, section 16 of the Washington State Constitution prohibits a trial judge from commenting upon the evidence. The purpose of this provision is

> to prevent the jury from being influenced by knowledge conveyed to it by the trial judge as to his opinion of the evidence submitted. . . . [T]his constitutional prohibition forbids only those words or actions which have the effect of conveying to the jury a personal opinion of the trial judge regarding the *credibility, weight* or *sufficiency* of some evidence introduced at the trial.

(Italics ours.) *State v. Jacobsen,* 78 Wn.2d 491, 495, 477 P.2d 1 (1970); *accord, State v. Hansen,* 46 Wn. App. 292, 300, 730 P.2d 706, 737 P.2d 670 (1986).

 The manner in which the trial judge interjected himself into Barnes' trial was unusual and understandably raises concerns about an impermissible comment on the evidence. However, we find no such error because the judge's comment cannot fairly be construed as conveying his personal opinion of the "credibility, weight or sufficiency of [the] evidence". *Jacobsen,* 78 Wn.2d at 495. Rather, we construe the comment as a statement of law,

---

the defendant's parents provided information relating to the cause of defendant's alleged diminished capacity, describing other incidents of irrational behavior, and indicating that defendant had once been evaluated as schizophrenic. 45 Wn. App. at 708–09, 711. Here, defendant had raised two defenses, had already had one psychiatric examination, and offered no corroborative evidence of diminished capacity.

[3]The trial court found the evidence sufficient to warrant instructing the jury on Barnes' diminished capacity defense. The jury was instructed that:

> Whenever the actual existence of any particular mental state is a necessary element to constitute a particular crime, the fact of mental illness or disorder may be taken into consideration in determining such mental state.

*i.e.*, a statement to the jury that insanity was not one of Barnes' defenses.[4] No error occurred.

## IV

Barnes also assigns error to the trial court's imposition of an exceptional sentence. He argues that the reasons given are not supported by the evidence and are not substantial and compelling under the Sentencing Reform Act of 1981.

The trial court gave three reasons for imposing an exceptional sentence:

> (1) The defendant committed the murder & assault in front of several young children, including his own daughters, Brandi, age 5½ & Stephanie, age 3½. He thus not only deprived these young girls of their mother, but committed the heinous act of violence in their presence.
> (2) The defendant had engaged in a pattern of assaults & threats against Debbie Barnes, rendering her fearful for her own life & that of her mother during her last months before her murder.
> (3) The defendant has demonstrated a complete lack of remorse, willingness to perjure himself, and a general obsessive personality that make him extremely dangerous to any family members alive upon his release from DOC.

Because the State concedes that in this case the second reason is not a valid basis for imposing an exceptional sentence, we address only reasons (1) and (3).

Barnes argues that reason (1) is not supported by the evidence because at the time of the actual stabbings the children were not in the kitchen where the attack occurred, but instead were in the bedroom, under the bed. Since this is a factual challenge, the reason must be upheld unless it is clearly erroneous. *E.g., State v. Tunell*, 51 Wn. App. 274, 278, 753 P.2d 543, *review denied*, 110 Wn.2d 1036 (1988).

The reason is not clearly erroneous. Brandi saw Barnes jump out of the closet brandishing a knife. She and the other children then hid, presumably in fear. Brandi was present for Mrs. Barnes' last movements. Barnes' acts and

---

[4]Under former statutes authorizing a plea of insanity, the term "mental irresponsibility" was interchangeable with the term "insanity". *State v. Tyler*, 77 Wn.2d 726, 739, 466 P.2d 120 (1970), *vacated in part on other grounds*, 408 U.S. 937 (1972).

their consequences therefore occurred in large part in the presence of the children, and the facts stated in reason (1) are substantially, if not precisely, accurate.

█ In any event, the fact that the children were in the house during the stabbings and knew the stabbings were occurring is sufficient justification for upholding reason (1). This court recently held that the impact of a crime on persons not present at its commission can support an exceptional sentence when "the defendant's actions have an impact on others of such a distinctive nature that it is not normally associated with the commission of the offense in question *and* where the impact is foreseeable to the defendant." *State v. Crutchfield*, 53 Wn. App. 916, 928, 771 P.2d 746 (1989). These factors are met here.[5]

Further support for upholding reason (1) can be found in Minnesota law, which is persuasive authority in Washington. *Crutchfield*, 53 Wn. App. at 927. In *State v. Gurske*, 424 N.W.2d 300 (Minn. Ct. App. 1988), the court upheld an exceptional sentence imposed for the murder of defendant's wife. After stabbing his wife, defendant burned her. The couple's children were present in their home. The court said:

> The victimization of the children was also a proper ground for departure. Although the children did not witness the stabbing, Travis, whom Gurske described as looking "bug eyed," saw the fire and smoke coming from the master bedroom and did not see his mother emerge. In a significant sense he was a witness to her death.

(Citation omitted.) 424 N.W.2d at 305. Similarly, in *State v. Eberhardt*, 379 N.W.2d 242 (Minn. Ct. App. 1986), the court upheld an exceptional sentence imposed in part because the crime, a rape, was committed in the presence of the victim's 5–year–old son. The boy had remained in a different room throughout the assault.

---

[5]According to her psychiatrist, Brandi was "extremely traumatized by the death of her mother at the hands of her father, and at having witnessed the event", and had regressed below age level both emotionally and developmentally. This extreme traumatization was foreseeable to Barnes, who knew the children were in the house when he stabbed Mrs. Barnes and Underwood.

■ Although we uphold reason (1), we reject reason (3), which states a future dangerousness rationale. A finding of future dangerousness must be supported by a record establishing a history of similar acts, and/or containing evidence that the defendant is not amenable to treatment. *State v. Vandervlugt,* 56 Wn. App. 517, 522–23, 784 P.2d 546 (1990); *State v. Pryor,* 56 Wn. App. 107, 113, 782 P.2d 1076 (1989), *review granted,* 114 Wn.2d 1001 (1990); *Tunell,* 51 Wn. App. at 283. The record here supports neither of these elements. Moreover, future dangerousness has been relied on as a reason for imposing an exceptional sentence only rarely in cases that do not involve sexual offenses or other crimes springing from compulsions that are difficult, if not impossible, to treat.[6] The record provides no evidence that Barnes' attacks on Mrs. Barnes and Underwood were motivated by this type of compulsion.

We also reject the future dangerousness finding because none of the trial court's grounds for finding future dangerousness are tenable. To date, lack of remorse has been used to support a future dangerousness finding only when it is considered in the context of a defendant's amenability to treatment. *Tunell,* 51 Wn. App. at 283; *State v. Davis,* 53 Wn. App. 306, 313–16, 766 P.2d 1120, *review denied,* 112 Wn.2d 1015 (1989). We are unwilling to extend this ground further. We are also unwilling to accept the trial court's

---

[6]Most cases in which future dangerousness has been upheld as an aggravating factor have involved sex crimes. *See, e.g., Pryor,* 56 Wn. App. at 107 (indecent liberties); *State v. Edwards,* 53 Wn. App. 907, 771 P.2d 755 (rape), *review denied,* 113 Wn.2d 1002 (1989); *State v. Olive,* 47 Wn. App. 147, 734 P.2d 36 (assault by defendant with history of sexual deviancy), *review denied,* 109 Wn.2d 1017 (1987). The few non–sex–crime cases in which a future dangerousness aggravating factor has been allowed have relied heavily on clear evidence that the defendant was not amenable to treatment. *See Vandervlugt,* 56 Wn. App. at 523 (record showed a history of violent criminal behavior, and expert opined that prognosis for treatment was poor given the chronic nature of defendant's personality disorder); *State v. Davis,* 53 Wn. App. 306, 313–15, 766 P.2d 1120 (future dangerousness rationale upheld in vehicular homicide case in which defendant, who was intoxicated when he committed the crime charged, disdained substance abuse treatment, had a history of alcohol related misconduct, and failed to accept responsibility for his behavior), *review denied,* 112 Wn.2d 1015 (1989).

reasoning that Barnes' "willingness to perjure himself" somehow indicates future dangerousness. Lastly, the trial judge's finding that Barnes has an "obsessive personality" is a psychological evaluation that should not be made without a substantial evidentiary showing, presumably including expert testimony. Such evidence was not provided here.

■ Because two of the court's three reasons for imposing an exceptional sentence are invalid, we remand for resentencing. A sentencing remand is required when the reviewing court cannot conclude from the record that the trial court would surely impose the same sentence after considering only the valid aggravating factor. *State v. Dunaway*, 109 Wn.2d 207, 220, 743 P.2d 1237, 749 P.2d 160 (1987); *Pryor*, 56 Wn. App. at 118. We cannot make that conclusion here, since a review of the court's oral opinion at Barnes' sentencing reveals that it placed considerable emphasis on Barnes' lack of remorse.

Barnes also asserts that his exceptional sentence is clearly excessive. For the murder and assault the trial judge sentenced Barnes to concurrent 540–month and 240–month terms. The standard range for his first degree murder conviction was 271 to 361 months; the standard range for his first degree assault conviction was 85 to 113 months.

■ A sentence will be deemed clearly excessive only if the trial court abused its discretion in fixing the duration of the sentence. *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986). The practical effect of the abuse of discretion standard is that "an appellate court will rarely, if ever, overturn an exceptional sentence because of its length." *State v. Creekmore*, 55 Wn. App. 852, 874, 783 P.2d 1068 (1989) (Forrest, J., concurring), *review denied*, 114 Wn.2d 1020 (1990). However, an abuse of discretion can result from the failure to exercise any discretion at all, as "'[t]he length of an exceptional sentence cannot come out of thin air.'" *Pryor*, 56 Wn. App. at 123 (quoting *State v. Wood*, 42 Wn. App. 78, 84, 709 P.2d 1209 (1985), *review denied*, 105 Wn.2d 1010 (1986)). The term of the exceptional sentence must have some "tenable basis in the

478

record." *Pryor,* 56 Wn. App. at 123. We question whether Barnes' 45–year sentence meets these requirements and caution the trial court to consider them at resentencing.

The judgment is affirmed and a sentencing remand is ordered.

The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. *See* RCW 2.06.040; CAR 14.

PEKELIS and FORREST, JJ., concur.

Review granted at 115 Wn.2d 1022 (1990).