[No. 20561-4-III. Division Three. January 14, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH ALLAN HOFFMAN, *Appellant*.

92

94

*Sharon M. Brown*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Tamara A. Taylor, Deputy*, for respondent.

KURTZ, J. — Joseph Hoffman appeals his conviction for sexual exploitation of a minor. He claims the superior court erred by revising the court commissioner's order dismissing his case. A commissioner dismissed the case because the State could not produce the victim for a defense witness interview prior to trial. After the State timely filed a motion for revision, the superior court judge revised the commissioner's order and directed that the case be set for hearing.

Under JuCR 7.8(b), if a juvenile offender is being detained pending the adjudicatory hearing, the hearing must be held within 30 days of the arraignment. If the hearing is not held within the time limits, the charge shall be dismissed with prejudice. JuCR 7.8(g). Under JuCR 7.8(d)(5), a motion for revision tolls JuCR 7.8(d) from the time a

motion for revision is filed until the formal order for revision is entered. Here, the motion for revision did not toll the expiration of the speedy trial time period because it was filed after the period had expired. Mr. Hoffman's conviction is reversed and the charge is dismissed with prejudice.

## FACTS

Joseph Hoffman is 17 years old. When he was 16 years old, he was convicted of the charge of sexual exploitation of a minor. RCW 9.68A.040(1)(b). The charge involved his 11-year-old cousin, to whom Mr. Hoffman paid $20 in exchange for two performances of live, nude dancing.

After a trial, Mr. Hoffman was convicted and sentenced to 30 days in jail, with 27 days of that time suspended upon the condition that he complete a Special Sex Offender Disposition Alternative. As a result of his conviction, Mr. Hoffman is required to register as a sex offender under RCW 9A.44.130(1). The order of disposition was stayed by order of the trial court, pending this appeal.

CrRLJ 3.3(c)(1) provides a juvenile not detained in jail shall be brought to trial not later than 60 days after arraignment. Mr. Hoffman was arraigned on June 6, 2001. His trial date was set for August 3—58 days after the arraignment. An omnibus hearing was scheduled for July 11.

Almost two weeks before Mr. Hoffman was arraigned, Tammy Wolf, a juvenile victim witness coordinator, sent an initial form letter to the 11-year-old victim and left a telephone message for the victim's mother. They were staying at a women's shelter. Two days after the arraignment, Ms. Wolf sent a second letter to the shelter, advising the victim and her mother of the trial date. She understood that the shelter offered temporary housing, but she had received no indication that the mother and child were not there and neither letter was returned to the prosecutor's office.

As scheduled, the omnibus hearing came on for hearing on July 11—23 days before the trial date. Before that date, the court had granted discovery requests stated in an omnibus application filed by the prosecutor. At the hearing, the prosecutor advised the court that she had attempted to contact the victim the preceding day, but that she had lost contact with the victim and her mother. Mr. Hoffman's counsel advised the court that he could not satisfy the requests stated in the prosecutor's omnibus application without talking to the victim. Both sides agreed to continue the hearing for one week.

In the interim, on July 13, Peggy Arnold, the prosecutor's victim witness coordinator, located the victim's mother. She had been taken by a Pasco police officer to a detox center and then moved to the mental health ward of Lourdes Hospital. The mother acknowledged that she knew about the trial date, but she refused to tell Ms. Arnold where her daughter was staying. Thereafter, Ms. Arnold contacted the victim's father, who provided an address for the mother. On July 13, subpoenas for the victim were mailed to the women's shelter, the Richland address provided by the father, and to the father at the address of the victim's grandfather, where he was staying.

On July 14 or July 15, Ms. Arnold met with the father and personally served upon him a subpoena for the victim. At that time, the father did not have legal custody of his daughter, although he later would initiate such a proceeding on August 1. Despite these efforts, Ms. Arnold was not able to meet with the victim.

The continued omnibus hearing came on for hearing on July 18. The prosecutor advised the court of the information obtained by Ms. Arnold. In response, Mr. Hoffman's counsel orally moved to dismiss the case, stating his inability to interview the victim rendered ineffective his assistance to his client. The court continued the matter for an additional week, warning the prosecutor that appropriate arrangements for a witness interview must be made.

The omnibus hearing came on again for hearing on July 25. Sometime before the hearing, the prosecutor had obtained an order authorizing a deposition of the victim. Now, the prosecutor asked that this order be cancelled and, in its place, the court authorized a material witness warrant for the victim. In response, the court pressed the prosecutor for information regarding the location of the victim. The State revealed that the mother would not tell the prosecutor where her daughter was located. Additionally, the prosecutor informed the court that the police officer who had interviewed Mr. Hoffman would be on vacation on the August 3 trial date. The State asked for a five-day continuance.

In response, the court granted the prosecutor's request for a material witness warrant, but would not continue the case. The court warned the prosecutor that she should find the victim or face dismissal of the case, regardless of whether the police officer was available. In response to Mr. Hoffman's counsel's renewed motion to dismiss the case, the court identified two problems—Mr. Hoffman's right to a speedy trial and his right to effective counsel. Nevertheless, the court did not dismiss the case, but merely continued the matter until August 1. The court indicated that it wanted to know whether the victim was available for trial on August 3 before it considered the State's motion for continuance.

Two days later, on July 27, the prosecutor returned to court, armed with a written motion to continue the case so that the officer would not have to interrupt his vacation. Apparently, the matter came on for hearing without notice and before a different judicial officer than the court commissioner who had refused to continue the case. The court scheduled the matter for hearing before the court commissioner.

At the July 30 hearing, the police officer explained that he had received his subpoena the previous Monday, that the trial date conflicted with a long-scheduled commitment to a Boy Scout function, and that he would be available to testify on August 6, the Monday following the Friday, August 3

trial date. He further explained that his testimony con-
cerned an interview with Mr. Hoffman. After hearing this
testimony, the court found that there was good cause for the
continuance and continued the case until August 6—a date
61 days after Mr. Hoffman's arraignment.

The omnibus hearing came on again for hearing on
August 1, five days before the continued trial date. Mr.
Hoffman's attorney had not been able to interview the
victim and asked the court to dismiss the case. In response,
the State offered the testimony of a number of witnesses
regarding its efforts to locate the victim.

The victim's grandfather testified that he did not know
his granddaughter's current location. Two weeks ago, he
testified, the mother and child had moved. He further
testified that his son Roger had been to court and obtained
temporary, legal custody of the child, but Roger had never
had actual, physical custody of her. Additionally, Ms. Wolf
and Ms. Arnold testified regarding their efforts as victim
coordinators to locate the victim and secure her presence at
the trial. After hearing the testimony, the court made a
finding that the prosecutor had acted with due diligence.

At this point, the court asked the prosecutor for assur-
ances that the victim would be present for trial the follow-
ing Monday, August 6. The prosecutor responded by saying
that she had recently spoken with a "contact" person
identified as "Cassidy" who reported that the victim's
mother was trying to get her back for trial. Report of
Proceedings (RP) at 59. But, the mother was unaware that
the trial had been moved from August 3 to August 6. The
prosecutor further informed the court that she had person-
ally spoken with the mother on July 26. She learned that
the mother was staying with her own mother, but both the
victim and the mother were reluctant to testify. In response,
the court summarized the prosecutor's position: "what we
have . . . [is] this contact person's assurance that she will
try to get [the victim] here by Friday." RP at 61-62. To which
the prosecutor added: "and [the mother's representation]

that she was trying to get her daughter over here . . . ." RP at 62.

The prosecutor asked the court for a one-week continuance of the August 6 trial date. In response, the court found that there was no reasonable likelihood that the State would be able to produce its witness on the trial date and, consequently, dismissed the case.

Thereafter, on August 9, the State filed a motion for revision. After considering the record, the superior court judge granted the State's motion. In a letter filed on August 23, the court stated: "the dismissal of the case was an abuse of discretion as there is no showing of arbitrary action or governmental misconduct. Neither is there a showing of prejudice to the rights of the accused which materially affect his right to a fair trial." Clerk's Papers (CP) at 41. Thereafter, the superior court stated: "The Commissioner's ruling of dismissal is reversed. The matter shall be set for trial." CP at 41.

Six days later, on August 29, the matter reappeared on the docket before the court commissioner. At that time, Mr. Hoffman's counsel advised the court that there were three days remaining before his client's speedy trial period expired. In response, the prosecutor argued that the period was tolled until a formal order of revision was entered. Additionally, the State indicated that it would be asking for an additional continuance based upon the disruption caused by the dismissal of the case. The commissioner directed the parties to get the order of revision entered and file written motions. On September 6—14 days after the judge's letter was filed—a formal order of revision was entered. Although the form of the two documents is different, there is no difference in the content.

On September 5, the parties reappeared before the court commissioner. This hearing occurred the day before a formal order of revision was entered by the judge. At that time, the commissioner granted the State's motion for a continuance and set a trial date of September 17. At the hearing, Mr. Hoffman's counsel stated:

I think that the Court then has the discretion to continue this matter for five days exceeding the regular speedy trial time. We are—we have nothing to say with regards to . . . their motion . . . .

RP at 75. At the trial, Mr. Hoffman stipulated to the admissibility of the police reports as evidence and offered no defense. He was convicted. Mr. Hoffman appeals.

## ANALYSIS

*Did the superior court err by revising the court commissioner's order dismissing the case?*

■ ■ REVISION OF A COMMISSIONER'S RULING. Revision of a commissioner's ruling is governed by article IV, section 23 of the Washington Constitution and RCW 2.24.050. Article IV, section 23 authorizes the appointment of court commissioners, but states that the commissioner's authority is "subject to revision" by the judge. RCW 2.24.050 elaborates by stating "[a]ll of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court." The statute further explains, "[s]uch revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner." The right to seek revision of a court commissioner's order is different than the right to seek review of a trial court order. For one thing, the right to seek revision of a commissioner's order is not limited to a final judgment. *State v. Smith*, 117 Wn.2d 263, 276, 814 P.2d 652 (1991). Also, an appellate court's review of a trial court's decision is more deferential than the superior court's revision of a commissioner's ruling. *State v. Wicker*, 105 Wn. App. 428, 432-33, 20 P.3d 1007 (2001). Finally, once the superior court makes a decision on revision, the appeal is from the superior court's decision, not the commissioner's. *Id.* at 433.

The significance of these distinctions was addressed in *Wicker*. In her appeal, Ms. Wicker argued that she was denied effective assistance of counsel because her counsel failed to move for revision of the commissioner's decision

finding her guilty of fourth degree assault. In response, the State argued that Ms. Wicker was not prejudiced because she timely appealed her conviction to the Court of Appeals. In holding that the failure to file a motion for revision constituted ineffective assistance of counsel, Judge Webster emphasized the difference between a motion for revision and an appeal. In the Court of Appeals, the "Court's review is far more deferential to the commissioner's ruling." *Id.* But, he noted, if Ms. Wicker's counsel had moved for revision, there would have been less deference to the commissioner's ruling and the appeal would have been taken from the judge's decision. *Id.*

STANDARD OF REVIEW. The parties disagree as to whether the court commissioner dismissed the case under CrR 4.7(h)(7)(i), for a discovery violation, or under CrR 8.3(b), for mismanagement. Regardless, the court accepted the State's analysis that the case was dismissed under CrR 8.3(b).

■■ Dismissal of a criminal prosecution under CrR 8.3(b) "is discretionary and is reviewable only for manifest abuse of discretion." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). CrR 8.3(b) requires a showing of governmental misconduct before dismissal of a prosecution is appropriate. Where there is no showing of governmental misconduct, the trial court's dismissal of the case will be reversed. *Blackwell*, 120 Wn.2d at 832 (quoting *State v. Underwood*, 33 Wn. App. 833, 837, 658 P.2d 50 (1983)). But, governmental misconduct need not be of an evil or dishonest nature; simple mismanagement is sufficient. *State v. Coleman*, 54 Wn. App. 742, 748-49, 775 P.2d 986 (1989).

■■ Likewise, dismissal under CrR 4.7(h)(7)(i) "is discretionary and is reviewable only for manifest abuse of discretion." *State v. Ramos*, 83 Wn. App. 622, 636, 922 P.2d 193 (1996). Dismissal for a discovery violation, however, is an extraordinary remedy available only when the defendant has been prejudiced by the prosecution's action. *State v. Cannon*, 130 Wn.2d 313, 328, 922 P.2d 1293 (1996). The burden is on the defendant to establish, by a preponderance

of the evidence, prejudice requiring dismissal. *Id.* at 328-29. " '[W]hether dismissal is an appropriate remedy is a fact-specific determination that must be resolved on a case-by-case basis.' " *State v. Smith*, 67 Wn. App. 847, 851, 841 P.2d 65 (1992) (quoting *State v. Sherman*, 59 Wn. App. 763, 770-71, 801 P.2d 274 (1990)); *Ramos*, 83 Wn. App. at 637.

■ CrR 8.3(b)—MISMANAGEMENT. We first address the trial court's decision under CrR 8.3(b) for abuse of discretion. The rule authorizes the trial court to dismiss a criminal prosecution based on arbitrary action or prosecutorial misconduct. "The court, in furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial." CrR 8.3(b). Although simple mismanagement of the case is sufficient, dismissal remains an extraordinary remedy, to which the trial court may resort only in "truly egregious cases of mismanagement or misconduct by the prosecutor." *State v. Duggins*, 68 Wn. App. 396, 401, 844 P.2d 441, *aff'd*, 121 Wn.2d 524, 852 P.2d 294 (1993).

The seminal case is *State v. Price*, 94 Wn.2d 810, 620 P.2d 994 (1980). In *Price*, the court held "if the State inexcusably fails to act with due diligence, and material facts are thereby not disclosed to defendant until shortly before a crucial stage in the litigation process," a defendant's right to a speedy trial or his right to be represented by adequately prepared counsel may be impermissibly prejudiced. *Id.* at 814. This is the very concern expressed by the court commissioner when she warned the State that she might dismiss its case if the defendant were not allowed to interview the alleged victim before trial.

A very similar situation was considered in *State v. Wilson*, 108 Wn. App. 774, 31 P.3d 43 (2001), *review granted*, 146 Wn.2d 1008 (2002). In *Wilson*, the trial court dismissed robbery charges against the defendants under CrR 8.3(b) based on the prosecutor's repeated failure to secure a defense interview with one of the alleged victims. Holding

that the prosecutor's failure to secure an interview between defense counsel and a witness is not misconduct, even if the prosecutor had agreed to arrange the interview, Division One of this court reversed. *Id.* at 780-81. The court noted that because the witness had the right to refuse the interview, the prosecutor could not be legally obligated to arrange the interview. *Id.* at 775-76. Significantly, the court held "[t]he prosecutor's inability to secure the interview did not amount to arbitrary action or governmental misconduct under CrR 8.3." *Id.* at 776.

■ Here, the commissioner warned the State that if it failed to make the witness available for a defense interview, she might dismiss its case. Here, the State's failure to secure a defense interview with the victim was excusable. The State's efforts to secure that interview are detailed in this opinion and they are not insignificant. In retrospect, it is clear that the victim and her family were reluctant to cooperate with the prosecution of the case. Under these facts, the State's failure to produce the victim for a defense interview does not amount to misconduct and mismanagement. The record supports the commissioner's and judge's findings of due diligence on the part of the prosecutor in attempting to facilitate the witness interview.

■ ■ CrR 4.7(a)—Discovery Violation. Mr. Hoffman argues that his case should have been dismissed under CrR 4.7(a) for a discovery violation. CrR 4.7(a) requires prosecutors to disclose certain information and material to the defendant, including the names and addresses of the State's witnesses and reports or statements of experts made in connection with the case. The purpose of CrR 4.7 is "to prevent a defendant from being prejudiced by surprise, misconduct, or arbitrary action by the government." *Cannon*, 130 Wn.2d at 328. The record before us does not establish a discovery violation. The commissioner may have implicitly ordered the State to produce the victim for an interview. But, for the reasons stated in our discussion of CrR 8.3(b), the State's failure to produce the victim was neither a discovery violation nor prosecutorial misconduct.

PREJUDICE. Under both CrR 4.7 and CrR 8.3, Mr. Hoffman has the burden of proving prejudice affecting his right to a fair trial. The superior court ruled that Mr. Hoffman was not prejudiced by the State's failure to produce the victim for an interview. This court need not address prejudice to Mr. Hoffman because his failure to establish either prosecutorial mismanagement or a discovery violation is sufficient to affirm the superior court's ruling. Even so, there are tenable reasons supporting the judge's conclusion that Mr. Hoffman was not prejudiced by the State's failure to produce the victim.

The case was dismissed five days before the continued trial date. At that time, there was some reason to believe that the victim would have appeared the Friday before the Monday trial. In that circumstance, the victim would have been held pursuant to a material witness warrant issued by the court and available for a witness interview. Moreover, as stated in the reply brief of the appellant, "[t]here is no question but that the alleged victim's testimony . . . constituted the case." Appellant's Reply Br. at 14. If the victim had not appeared at trial on that Monday, it is likely that the case would have been dismissed or the defendant acquitted. Finally, because dismissal is the extraordinary remedy, it can be argued that a continuance would have been the appropriate remedy. Dismissal is the extraordinary remedy, which is available only when a defendant establishes by a preponderance of the evidence that the State's conduct has prejudiced his defense. *Ramos*, 83 Wn. App. at 637. Even if there was a discovery violation or mismanagement associated with the State's failure to produce the victim for a defense interview, Mr. Hoffman cannot show prejudice affecting his right to a fair trial, which is required under both rules.

Relying upon *Price*, Mr. Hoffman argues that any delay beyond the speedy trial date is inherently prejudicial. This very argument was considered and rejected in *Smith*, which concluded "that the rule in *Price* is not an absolute bar to granting a continuance beyond the speedy trial

period to enable the defense to address new discovery." *Smith*, 67 Wn. App. at 853. There may be circumstances where the court in its discretion may dismiss the case due to prosecutorial mismanagement. But, as the court stated in *Sherman*, 59 Wn. App. at 770-71, "the question of whether dismissal is an appropriate remedy is a fact-specific determination that must be resolved on a case-by-case basis." We reject Mr. Hoffman's contention that any delay beyond the speedy trial date is inherently prejudicial and accept the proposition stated in both *Smith* and *Sherman* that dismissal as a remedy is limited to those cases where the defendant can establish by a preponderance of the evidence that the State's conduct prejudiced the defendant's right to a fair trial.

*Did the superior court abuse its discretion in granting the State a continuance beyond the speedy trial expiration date to accommodate a witness the State had failed to subpoena?*

█ STANDARD OF REVIEW. JuCR 7.8(b) provides that the adjudicatory hearing on a juvenile offense is to begin within 60 days after the date of arraignment. If the adjudicatory hearing is not held within the time limits set by the rule, JuCR 7.8(g) provides that the information shall be dismissed with prejudice. JuCR 7.8(e)(2)(ii) provides, however, that continuances or other delays may be granted on the motion of the prosecuting attorney if "the State's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that [the needed evidence] will be available within a reasonable time." The grant or denial of a motion to continue is reviewed for abuse of the trial court's discretion and to determine whether the defendant has been prejudiced by the delay. *State v. Barnes*, 58 Wn. App. 465, 471, 794 P.2d 52 (1990), *aff'd*, 117 Wn.2d 701, 818 P.2d 1088 (1991).

DUE DILIGENCE. Mr. Hoffman argues that the superior court erred when it affirmed the court commissioner's finding that the State acted with due diligence. He contends that because the State did not issue a subpoena to the victim that complied with CR 45(c), the State cannot show

due diligence. He relies upon the holding in *State v. Adamski*, 111 Wn.2d 574, 578, 761 P.2d 621 (1988) that "due diligence requires the proper issuance of subpoenas to essential witnesses."

In *Adamski*, on the day trial was scheduled to begin, the State moved for a continuance because a crucial witness was not present. The State had attempted to compel the witness's attendance at trial by mailing a subpoena to the witness as opposed to personal service of the subpoena in the manner required by CR 45. *Id.* Under those circumstances, the court held the State's failure to properly serve the subpoena fell below the standard of due diligence. Similarly, when the State failed to personally serve a subpoena in *State v. Duggins*, 121 Wn.2d 524, 525, 852 P.2d 294 (1993), the court reiterated its holding in *Adamski* that "the State cannot show due diligence, for purposes of JuCR 7.8, unless the subpoena was served by one of the methods described in CR 45(c)." *Id.*

██ ██ The facts of Mr. Hoffman's case are somewhat unusual. In *Adamski* and *Duggins*, the alleged juvenile offender appealed the order granting the continuance beyond the 60-day period based upon a challenge to the court's finding of due diligence. Here, after finding that the State had acted with due diligence, the court commissioner denied the State's request for a continuance and dismissed the case. Thereafter, the superior court affirmed the commissioner's finding but revised her order of dismissal. Mr. Hoffman appeals the order granting the continuance, specifically challenging the court's finding that the prosecutor exercised due diligence.

There are two reasons why the holding in *Adamski* should not apply to the facts of this case. In *Adamski*, the State asked for a continuance after an essential police officer witness failed to appear. The State could have compelled this witness to appear by personal service of a subpoena, but elected to mail the subpoena. In this case, the State could not have personally served a subpoena upon the victim because the State did not know her location. Second,

the State obtained a material witness warrant. If the State's efforts to learn of the victim's location had been successful, the State would have compelled the victim's attendance at the trial by detaining her. This record supports the court's finding that the State acted with due diligence.

*Did the court err by granting a continuance to accommodate the police officer's vacation?*

 Mr. Hoffman challenges the court's decision to grant the State's motion for a continuance—a three-day continuance that continued the case one day beyond the speedy trial time period. Mr. Hoffman argues that a police officer's vacation is not a proper ground for a continuance. A decision to grant or deny a continuance is discretionary with the trial court and will not be disturbed absent a manifest abuse of discretion and a showing of prejudice to the defendant.

In *State v. Grilley*, 67 Wn. App. 795, 840 P.2d 903 (1992), Division One of this court held that the planned vacation of a police officer can justify a continuance. In so holding, the court stated:

> The right to a speedy trial is a significant right. However, if conflicts with previously scheduled vacations of investigating officers could never be considered as a proper basis for a relatively brief continuance beyond the speedy trial period, we doubt that some officer witnesses would ever be able to take vacations.

*Id.* at 799. The logic of this statement is irrefutable.

Additionally, Mr. Hoffman contends the State did not give adequate notice of its intent to seek a continuance. We disagree. The State moved promptly after discovering the conflict. The matter was initially raised at the continued omnibus hearing on July 25. Two days later, the prosecutor filed a written motion, which the court scheduled for hearing on July 30, three days before the August 3 trial date. Under these circumstances, Mr. Hoffman has not shown the court abused its discretion in granting a continuance to a date one day beyond the speedy trial time period.

*Did the court err by scheduling the trial date beyond the speedy trial time period after the revision of the commissioner's ruling?*

JuCR 7.8(d)—TOLLING OF THE SPEEDY TRIAL TIME PERIOD. In its appeal, the State contends that because it timely filed its motion for revision of the order of dismissal, the tolling of the speedy trial time period began with the entry of the order of dismissal. The State further contends that the tolling period ended when a formal order of revision was entered. Specifically, the State's position is that the speedy trial time period was tolled from August 1, when the commissioner dismissed the charges, until September 6, when a formal order of revision was entered. Accordingly, the State asserts that it filed its motion for continuance within the remaining speedy trial time period, when it filed its motion for a continuance on August 31, explaining to the court that "[t]here are four days remaining of speedy trial time." CP at 36.

The resolution of this issue is determined in part by JuCR 7.8(d), which provides:

**Excluded Periods.** The following periods shall be excluded in computing the time for the adjudicatory hearing:

. . . .

(5) The time between a motion for revision of a court commissioner's ruling and the entry of a decision by a judge.

Read literally, the subsection appears to toll the running of the speedy trial time period from the time the motion for revision is filed until the entry of a decision by a judge. In order to reach the result advocated by the State, we would need to conclude that the language "[t]he time between a motion for revision of a court commissioner's ruling and the entry of a decision by a judge" is unclear and requires interpretation.

In *State v. Smith*, 117 Wn.2d 263, 273-76, 814 P.2d 652 (1991), Mr. Smith argued that JuCR 7.8 tolled his speedy trial time period only when the State made a proper motion for revision of a final order. In rejecting this argument, the

court characterized the language of JuCR 7.8(d)(5) as plain and unambiguous. *Id.* at 276. In relevant part, the court stated, "[t]he rule states unequivocally that the speedy trial periods for juvenile defendants are tolled *from the time a motion for revision is filed* until the superior court's decision is entered." *Id.* (emphasis added). Arguably, this language is dicta. Even so, it would be difficult to ignore the statement of the Supreme Court as to what the rule unambiguously means. When a court rule is unambiguous, the language must be given its plain meaning. *State v. Bernhard*, 45 Wn. App. 590, 598, 726 P.2d 991 (1986).

There is another excluded period that could possibly be applied to Mr. Hoffman's case. JuCR 7.8(d)(4) excludes in computing the time for the adjudicatory hearing: "[t]he time between the dismissal and the refiling of the same charge." For instance, if the State had filed an appeal to this court, as opposed to a motion for revision, the time from the entry of the order of dismissal until the refiling of the case would be tolled. In some respects, this would appear to be a more workable provision. Unfortunately, there is no honest way to make the language of subsection (d)(4) work. There was no refiling of the charge against Mr. Hoffman. Rather, the State filed a motion for revision, which is the specific subject of subsection (d)(5).

WAIVER. The State argues that Mr. Hoffman waived any objection to the September 17 trial date. Specifically, the State is referring to his counsel's statement at the September 5 hearing, where counsel indicated that the court had discretion to continue the matter and stated "[w]e are—we have nothing to say with regards to . . . their motion." RP at 75.

JuCR 7.8(c) makes CrR 3.3(f) applicable to juvenile cases. These rules place the responsibility of ensuring compliance with the speedy trial time rule on the court, but require the defense to shoulder some of the burden. Specifically, a defendant who fails to object within 10 days of receiving notice of a trial date set outside the speedy trial time period waives the speedy trial objection. CrR 3.3(f); JuCR 7.8(c).

The purpose of these rules is to afford the court an opportunity to avoid a speedy trial violation. *State v. Malone*, 72 Wn. App. 429, 433, 864 P.2d 990 (1994).

If this court accepts *Smith*'s interpretation of JuCR 7.8(d)(5), we would conclude that Mr. Hoffman's speedy trial time period expired on August 6 because the period was not tolled until the State filed its motion for revision on August 9. Therefore, the trial court could not have set the case within the speedy trial time period, even if Mr. Hoffman's counsel had objected on September 5, when the case was set for trial on September 17, more than a month after the expiration of the speedy trial time period.

In *State v. Chandler*, 143 Wn.2d 485, 487, 21 P.3d 286 (2001), the juvenile defendant timely objected to the date set for his adjudicatory hearing for the reason that the date was more than 60 days from the date of his arraignment. In response, the court acknowledged that the hearing date was outside the 60-day period, but the court reasoned that under JuCR 7.8(e)(3), " '[t]he court on its own motion may continue the case when required in the due administration of justice and the alleged juvenile offender will not be substantially prejudiced in the presentation of his or her defense.' " *Chandler*, 143 Wn.2d at 488 (quoting JuCR 7.8(e)(3)). In reversing the trial court and dismissing the case, the Supreme Court held: "JuCR 7.8(e)(3) has no application here because it only authorizes a trial court *to continue the case* after it has been set within the time frame set forth in JuCR 7.8(b)." *Id.* at 490. In explanation of its ruling, the court said that a continuance granted under JuCR 7.8(e)(3) is not an exception to the speedy trial rule but a tolling provision.

In Mr. Hoffman's case, the State filed a motion for a continuance on August 31, explaining that the order of revision would be entered the next week, on September 5. The motion further explained that the continuance was required in the administration of justice due to the disruption caused by the dismissal of the case. The motion further explained that the motion was timely because "[t]here are

four days remaining of the speedy trial time." CP at 36. However, under *Chandler*, a motion to continue the case in the due interest of justice is timely only if the motion is made within the speedy trial time period. If we accept *Smith's* interpretation of JuCR 7.8(d)(5), the State's motion for a continuance would not have been timely because the speedy trial time period expired on August 6.

HOLDING. Under JuCR 7.8(d), a motion for revision tolls JuCR 7.8(d)(5) from the time a motion for revision is filed until a formal order of revision is entered. Here, a motion for revision was filed after the expiration of the speedy trial time period. Under JuCR 7.8(g), the charge must be dismissed with prejudice.

SCHULTHEIS, J., concurs.

BROWN, C.J. (dissenting) — For three reasons I respectfully dissent.

First, the speedy trial clock stopped when the commissioner dismissed Mr. Hoffman's case. *State v. Bible*, 77 Wn. App. 470, 471, 892 P.2d 116, *review denied*, 127 Wn.2d 1011 (1995). At that point the speedy trial limit had not been reached. Time remained to try this case, albeit insufficient time for either side to adequately prepare for trial before the speedy trial limit was breached.

Second, upon receipt of the superior court judge's letter announcing her revision reversing the dismissal, the State, recognizing the time insufficiency, expeditiously and successfully moved to extend the speedy trial limit under JuCR 7.8(e)(2)(iii) for the due administration of justice. Certainly, it would not be just for either side of this dispute to rush to trial without adequate time to call witnesses and otherwise prepare. Indeed, resort to JuCR 7.8(e)(2)(iii) for this type of problem is suggested in *State v. Wilcox*, 71 Wn. App. 116, 119, 856 P.2d 1104 (1993). The trial court did not abuse its discretion granting the extension.

Third, while both sides correctly point to gaps between the juvenile, superior, and appellate court rules when

discussing Mr. Hoffman's appeal, the facts necessary to raise those issues are not before us and importantly, were not raised or argued to the trial court. Moreover, an appeal would have wasted scarce judicial resources and delayed justice. If, indeed, no juvenile court rule or other rule applies, then a constitutional speedy trial framework is required, and our focus would be a reasonable time to try Mr. Hoffman. *See State v. Whelchel*, 97 Wn. App. 813, 823, 988 P.2d 20 (1999), *review denied*, 140 Wn.2d 1024 (2000) (when no state speedy trial rule applies, a constitutional speedy trial analysis is indicated). By constitutional standards, Mr. Hoffman received a speedy trial.

In sum, I do not agree with raising dicta in *State v. Smith*, 117 Wn.2d 263, 273-76, 814 P.2d 652 (1991) and elevating it to require reversal when considering the *Bible* court's specific and unassailable logic that dismissal stops the running of the speedy trial clock. While I would recommend revision of the juvenile court rules to provide for an automatic resetting of the juvenile speedy trial limits consistent with the framework of the superior court and appellate court rules, this is not a matter for us to decide. Here, the juvenile court commissioner properly considered and granted a limited extension under JuCR 7.8(e)(2)(iii) to allow the parties to properly prepare for trial after the superior court judge correctly revised the commissioner's initial decision to dismiss this case with prejudice.

Accordingly, I would affirm.