# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| THERESA F. MURPHY, | ) | No. 75533-1-I |
| Appellant, | ) | |
| v. | ) | |
| ESTATE OF GLORIA P. LUNDEN, a/k/a GLORIA P. SIMMONS, | ) | UNPUBLISHED OPINION |
| Respondent. | ) | FILED: November 13, 2017 |

VERELLEN, C.J. — Robert Lunden was co-guardian for his wife, Gloria Lunden.[1] Theresa Murphy, Gloria's daughter, sought to remove Robert as co-guardian and moved for a vulnerable adult protection order (VAPO).

In the VAPO proceeding, the commissioner disclosed that he had consulted with the guardianship judge about the procedural status of both cases and referred the determination of attorney fees and costs to the judge. Because Murphy did not object to the communication or referral before the commissioner or judge, she failed to preserve these issues for appeal, and we decline to exercise our discretion to reach these unpreserved claims of error.

Murphy contends the guardianship judge should have ordered Robert, rather than Gloria's estate, to pay attorney fees and costs associated with the VAPO.

---

[1] For clarity, we refer to Robert Lunden and Gloria Lunden by their first names.

Because Murphy expressly indicated any fees for the VAPO could be paid by either Robert or Gloria's estate, she invited any error, and we decline to address this issue.

The only issue properly before this court is the guardianship court's decision to award less than the full amount of requested attorney fees and costs. Because the trial court discounted only for duplicative efforts in the overlapping guardianship and VAPO proceeding, we conclude the trial court did not abuse its discretion when it did not award the full amount.

Therefore, we affirm.

## FACTS

In 2013, the court determined Gloria was incapacitated and Robert was appointed as co-guardian. As Gloria's health deteriorated, Murphy sought to remove Robert as a co-guardian. Murphy also filed a petition for a VAPO, challenging Robert's ability to care for Gloria. The guardianship proceeded before Judge Charles Snyder, and the VAPO proceeded before a series of commissioners.

The guardianship court suspended Robert as co-guardian. Robert sought to dismiss the VAPO. Murphy sought attorney fees and costs associated with the VAPO. During the hearing on the motion to dismiss, Commissioner Alfred Heydrich stated:

> I talked to Judge Snyder about this case Friday, because I wanted to get some feeling for where he was at. There were some things I didn't understand about where he was at on this, and I said to him wouldn't it make sense to consolidate these cases if I don't dismiss it on Monday? And frankly, he said yeah, it made sense.[2]

---

[2] Report of Proceedings (RP) (Dec. 21, 2015) at 26-27.

Commissioner Heydrich dismissed the VAPO without prejudice. As to the attorney fees, Commissioner Heydrich noted the lack of information about the financial situation of the parties and declined to address the issue:

> I don't feel comfortable making the call on that. I don't think there's enough evidence before me to allow me to make, frankly, a truly intelligent decision as to who should be paying anybody's attorney's fees, if at all, and I think that's something you can hopefully address more adequately in the guardianship matter. So I think that's where you're going to have to go ask that question is of Judge Snyder as to what should be done about attorney fees.[3]

Gloria died on January 25, 2016. At a hearing to address attorney fees and closure of the guardianship, Judge Snyder ordered Gloria's estate to pay attorney fees and costs associated with the VAPO.

Murphy appeals.

## ANALYSIS

### I. Communication and Referral

Murphy contends Commissioner Heydrich's conversation with Judge Snyder was an improper ex parte communication. Murphy also argues Commissioner Heydrich lacked authority to make a de facto transfer of the determination of attorney fees for the VAPO and Judge Snyder lacked authority to determine such fees.

Generally, we do not consider issues raised for the first time on appeal.[4] This rule encourages "'the efficient use of judicial resources' . . . by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals."[5]

---

[3] RP (Dec. 21, 2015) at 36.

[4] RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).

[5] State v. Robinson, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (quoting State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)).

Murphy did not object when Commissioner Heydrich disclosed his communication with Judge Snyder and referred the attorney fee determination. In fact, Murphy asked Commissioner Heydrich to include language in the dismissal order clarifying that VAPO attorney fees could be raised in the guardianship case. In the documents Murphy submitted to Judge Snyder, she cited Commissioner Heydrich's referral to support her request.[6] Thus, Murphy did not preserve these issues for appeal.

Murphy argues we should exercise our "discretion to reach unpreserved claims of error consistent with RAP 2.5."[7] Given the lack of objection and Murphy's request for language allowing VAPO attorney fees to be determined in the guardianship, we decline to exercise our discretion to reach these unpreserved claims of error.[8]

## II. Attorney Fees and Costs

Murphy contends the court erred when it required Gloria's estate to pay the attorney fees and costs associated with the VAPO, rather than Robert. Murphy also

---

[6] See Clerk's Papers (CP) at 458 ("The court also explicitly found that the guardianship court should determine the appropriate allocation of attorney fees and costs").

[7] State v. Blazina, 182 Wn.2d 827, 830, 344 P.3d 680 (2015).

[8] As to the communication between the commissioner and judge, we acknowledge that it is consistent with the Washington State Code of Judicial Conduct (CJC) for one superior court judicial officer to communicate with another about the procedural status of related matters. CJC 2.9 cmt. 5 provides that "[a] judge may consult on pending matters with other judges," but "must avoid ex parte discussions of a case with judges who have . . . appellate jurisdiction over the matter." The superior court has the power to revise commissioner rulings, but that does not equate with appellate jurisdiction "over the matter," at least for purposes of CJC 2.9. See State v. Hoffman, 115 Wn. App. 91, 101, 60 P.3d 1261, reversed on other grounds, 150 Wn. 2d 536, 78 P.3d 1289 (2003) ("The right to seek revision of a court commissioner's order is different than the right to seek review of a trial court order."). Notably, no motion to revise was pending before Judge Snyder at the time of these communications. It would be odd to bar any communications between judicial officers in the same court merely because some have revision authority.

argues the trial court abused its discretion when it did not award the full amount requested.

We apply a two-part standard of review to a trial court's award or denial of attorney fees: "(1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion."[9] "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons."[10] Here, RCW 74.34.130(7) permits the court to require "the *respondent* to pay a filing fee and court costs, including service fees, and to reimburse the petitioner for costs incurred in bringing the action, including a reasonable attorney's fee."[11] But in the petition for attorney fees, Murphy requested attorney fees associated with the VAPO to be paid by "either Robert Lunden . . . *or by the estate of Gloria P. Lunden.*"[12] Additionally, in a memo supporting her petition, Murphy again requested "Mr. Lunden *or the Estate of Gloria Lunden* be responsible for such payments."[13]

"This court will deem an error waived if the party asserting such error materially contributed thereto."[14] Because Murphy invited any error, we decline to address

---

[9] Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

[10] In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[11] (Emphasis added.)

[12] CP at 431 (emphasis added).

[13] CP at 459 (emphasis added).

[14] In re Dependency of K.R., 128 Wn.2d 129, 147, 904 P.2d 1132 (1995).

whether Robert rather than Gloria's estate should have been assessed attorney fees and costs.

As to the amount, Murphy sought $9,515.96, and the court awarded $1,562.50. A separate award of fees granted in the guardianship is not the subject of this appeal. In determining the appropriate amount, the court considered Murphy's request and discounted for duplicated efforts because "[a]ll of the issues could have been raised in the guardianship" and the separate VAPO did not "get any more of a result."[15]

Murphy claims the efforts were not duplicative because the VAPO led to Robert's removal as co-guardian in the guardianship case. In the temporary VAPO, the court ordered Robert to seek a neuropsychological evaluation to determine his capacity to care for Gloria. The guardianship court ordered Robert to provide the report from that evaluation. And, during the hearing on attorney fees, Judge Snyder stated:

> I was aware of this ongoing VAPO case while the guardianship was pending . . . and I know that one of the results . . . was that the court there ordered *the medical evaluations . . .* that this Court ultimately got regarding Mr. Lunden, and which *were the basis I think for this Court's determination that he should be suspended as guardian.*[16]

The evaluations ordered in the temporary VAPO did influence the guardianship court's decision to remove Robert as co-guardian. We conclude the court did not abuse its discretion in limiting the VAPO award to the fees and costs associated with preparing the initial VAPO petition containing the evaluation request.

---

[15] RP (April 8, 2016) at 52-53.

[16] RP (April 8, 2016) at 47 (emphasis added).

### III. Fees on Appeal

Murphy requests attorney fees under RCW 74.34.130. Under RAP 18.1, we may award attorney fees and costs if authorized by applicable law. RCW 74.34.130(7) permits the appellate court to award the prevailing petitioner fees and costs on appeal.[17] But Murphy is not the prevailing party on appeal. We deny Murphy's request for attorney fees on appeal.

Robert requests attorney fees under RCW 11.96A.150. Under RCW 11.96A.150(1)(a), the appellate court "may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party . . . from any party to the proceedings." Under all the circumstances, we decline to award fees on appeal under RCW 11.96A.150.

We affirm.

_____

WE CONCUR:

_____      _____

---

[17] See Endicott v. Saul, 142 Wn. App. 899, 929, 176 P.3d 560 (2008) (VAPO petitioner who prevailed on appeal entitled to attorney fees on appeal).