[No. 23368–8–I.   Division One.   May 21, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. GABRIEL GARCIA, *Appellant.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Michael E. Rickert, Prosecuting Attorney,* for respondent.

PEKELIS, J.—Gabriel Garcia pleaded guilty to aggravated first degree murder and was sentenced to life imprisonment without possibility of parole. He appeals from the Superior Court's denial of his motion to withdraw his guilty plea, claiming that he was denied effective assistance of counsel. We affirm.

Garcia was charged with aggravated first degree murder in the death of Roberta Alvarado. Alvarado died as the result of multiple stab wounds allegedly inflicted by Garcia during the course of the February 17, 1988, robbery of the Gilded Cage Pet Center in Mount Vernon, Washington.

The penalty for aggravated first degree murder is either life without possibility of parole or death. Garcia initially pleaded not guilty but later agreed to enter a plea of guilty in return for the State's promise not to seek the death penalty.

At the hearing on the entry of Garcia's plea of guilty, which took approximately a day, the trial court first

reviewed the elements of aggravated first degree murder and explained the consequences of a guilty plea. Garcia's attorneys, Robert Jones and Fred Heydrich, then requested time to discuss the element of premeditated intent with Garcia, and the court ordered a recess. After the recess, Garcia answered "yes" when the court asked him if he understood premeditated intent and the other elements of aggravated first degree murder. The court also questioned Garcia regarding the voluntariness of his plea, and Garcia advised the court that he was pleading guilty because he wanted to and not because his attorneys wished it.

Heydrich informed the trial court that he believed a jury would convict Garcia of aggravated first degree murder and would also impose the death penalty, and that he had discussed this with Garcia at length. The court then accepted Garcia's guilty plea.

Garcia later moved to withdraw his guilty plea, arguing that the plea was involuntary because he was denied effective assistance of counsel. Jones and Heydrich moved to withdraw as his counsel due to the resulting conflict of interest. The trial court granted the motion for the purpose of resolving Garcia's motion to withdraw his guilty plea, and Donald Bisagna was substituted as Garcia's counsel.

Through his new counsel, Garcia claimed that prior counsel had been ineffective in failing to adequately investigate potential defenses, in particular, those of diminished capacity and cocaine psychosis. He also asserts that his counsel had failed to explore possible mitigating circumstances relevant to sentencing. Garcia then moved for the appointment of a psychiatrist at state expense to determine whether he had the requisite mental state at the time of the crime. He claimed that a psychiatric evaluation was necessary to enable him to establish that he was prejudiced by prior counsel's failure to adequately investigate potential defenses. The trial court declined to authorize a state–paid expert to evaluate Garcia's mental state at the time of the crime.

Jones, Heydrich and Garcia testified at the hearing on Garcia's motion to withdraw his guilty plea. Heydrich testified that he represented Garcia from February 22, 1988, to June 10, 1988. According to Heydrich, a heavy case load and the serious nature of several of his cases made this period of time the most intense he had experienced since beginning the practice of law. However, he testified expressly that his heavy case load had no bearing on his review of the evidence in Garcia's case or on the advice he gave Garcia.

After Roberta Alvarado died, the prosecutor advised Heydrich that he was considering filing a death penalty notice. Heydrich asked him to wait and waived the 30–day filing requirement so that he could review the case file and investigate possible defenses.

In preparing Garcia's case, Heydrich interviewed witnesses and researched the issue of premeditated intent. He also hired an expert to independently analyze the State's serological (blood) evidence. He became convinced Garcia would be convicted if he went to trial and told Garcia there was a good chance he would receive the death penalty. He discussed Garcia's options with him in detail and reviewed the police reports with him. At the hearing, Heydrich refused to testify to his precise conversations with Garcia, asserting that these communications were privileged. There appears to have been no objection to the assertion of attorney–client privilege.

Heydrich also testified that he considered the possibility of raising cocaine psychosis and diminished capacity defenses, but concluded that neither would be effective at trial. He did not consult with an expert about the viability of either defense. When asked why he had not done so, he replied that he could not answer without revealing privileged client communications. Again, no objection to the assertion of attorney–client privilege appears on the record. Heydrich did testify that he would have handled the case differently had the State actually filed a death penalty notice. He specifically testified that he and Jones "would

have dug into the various defenses a lot more than [they] did" and would have sought a change of venue.

Jones did not become involved in Garcia's case until May 1988, when it became evident that the State was considering filing a death penalty notice. Jones testified that he considered diminished capacity and cocaine psychosis defenses, but concluded that expert assistance was not needed at that time. Jones also testified that he would have sought expert assistance had the State actually filed a death penalty notice.

Unlike Heydrich, Jones was not convinced Garcia would have received the death penalty had he gone to trial. However, he believed that a jury would convict Garcia of aggravated first degree murder. He discussed Garcia's options with him and believed that Garcia understood his options and the case. Jones testified that based upon his review of the evidence and the options available, he believed Garcia's best alternative was to plead guilty.

Garcia testified that his attorneys told him his only alternatives were "either plead guilty or dying." He also testified that his attorneys did not discuss the diminished capacity defense with him, but told him his only defense was the drug defense. He did not elaborate on what he believed the difference between these defenses to be. According to Garcia, his attorneys told him the jury would find "premeditated intent" but did not discuss the meaning of this term with him until the time of the hearing on his plea of guilty. At that hearing, he testified that he understood premeditated intent because if he admitted that he did not "[t]he judge could possibly reject the guilty plea and I would, you know, I could die."

Based on the above testimony, the trial court denied Garcia's motion to withdraw his guilty plea. In its findings of fact and conclusions of law, the court found that although Garcia's attorneys had heavier case loads than they would have liked, "neither defense attorney, Heydrich or Jones, indicated that the heavy case load prevented them from giving full consideration to Garcia's case." The

court also found that Heydrich and Jones "did everything they reasonably could to prepare and examine the state's evidence and intelligently advise the defendant." The court concluded that Garcia received effective assistance of counsel and that his guilty plea represented a voluntary and rational choice.

Garcia appeals from the trial court's denial of his motion to withdraw his guilty plea, contending that the plea was not voluntary because he was denied effective assistance of counsel. In support of this claim, Garcia argues that he was prejudiced by his attorneys' failure to treat his case as a capital case. Specifically, he claims his attorneys failed to adequately investigate potential defenses and to seek evidence of mitigating circumstances.

Garcia further contends that if the record on appeal is insufficient to show prejudice, it results, in part, from the trial court's denial of his motion to appoint an expert to evaluate his mental state at the time of the crime. Thus, he also appeals from this ruling, arguing that such an evaluation was necessary to enable him to establish that he was prejudiced by ineffective assistance of counsel. In addition, he contends that if this court concludes that he has made an insufficient showing of prejudice, the result should be not to affirm his conviction but to remand for an evidentiary hearing on the issue of prejudice.

In order to establish a claim of ineffective assistance of counsel, the defendant must first show that counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). The defendant must then show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. We need not address both prongs of the test if the defendant makes an insufficient showing on one. *Strickland*, 466 U.S. at 697. We conclude that Garcia has failed to make a sufficient showing of prejudice, and thus do not address the issue of whether counsel's performance was deficient.

When a challenge to a guilty plea is based on a claim of ineffective assistance of counsel, the prejudice prong is

analyzed in terms of whether counsel's performance affected the outcome of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985). The defendant must satisfy the court that there is a reasonable probability that, but for counsel's deficient performance, he or she would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59. Generally, this is shown by demonstrating to the court some legal or factual matter which was not discovered by counsel or conveyed to the defendant himself before entry of the plea of guilty. The Supreme Court has explained that

> where the alleged error of counsel is failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

*Hill,* 474 U.S. at 59.

Applying this standard to the facts presented here, it is evident that Garcia's first contention, that he was prejudiced by counsel's failure to investigate possible mitigating circumstances, fails. He claims that such evidence might have influenced the prosecutor's decision on whether to seek the death penalty. However, Garcia has failed to present evidence of any mitigating circumstances which Garcia's attorneys would have discovered had they investigated. Because Garcia did not identify what evidence of mitigating circumstances could have been presented to the prosecutor, we cannot even reach the issue of whether the evidence likely would have changed the outcome of the plea process. *See Hill,* 474 U.S. at 59.

Garcia also argues that Jones' and Heydrich's performances were deficient because they failed to adequately investigate potential cocaine psychosis and diminished capacity defenses. This argument appears to be based on the fact that Jones and Heydrich did not seek expert

assistance before concluding that these defenses would not be effective at trial.

We do not accept the notion that failure to consult an expert is prejudicial per se. In order to show that he was prejudiced by counsel's allegedly deficient performance, Garcia must, as a threshold matter, make some showing that he did in fact have such viable defenses. His former counsel testified that he considered, but rejected, these defenses based in part on his conversations with Garcia. He refused to reveal the content of these conversations, asserting attorney–client privilege. Garcia's substitute counsel did not explore this further.[1] In any event, Garcia had the burden of presenting some evidence to the court of facts which would support the submission of his defenses to a jury.

The trial court was advised of only the following: a syringe, needles and a packet of cocaine were found on Garcia when he was arrested; Garcia was addicted to cocaine and gave himself frequent injections; and he was said to go "crazy if he doesn't get any." This evidence shows only that Garcia used cocaine and suffered from withdrawal symptoms if none was available. Lacking is *any* evidence that Garcia's cocaine use affected his capacity to form the requisite mental state. Absent some such evidence, we cannot conclude that Garcia's asserted defenses likely would have changed the outcome of a trial. *See Hill,* 474 U.S. at 59.

Garcia maintains, however, that any insufficiency in the record on the prejudice prong is the result of his attorneys' failure to consult an expert. This error was further compounded, he claims, by the trial court's denial of his motion

---

[1] It appears that the privilege does not apply when a defendant claims ineffective assistance of counsel. *See Strickland,* 466 U.S. at 691 (inquiry into counsel's conversations with defendant may be critical to proper assessment of counsel's investigative decisions); *see also State v. Chervenell,* 99 Wn.2d 309, 316, 662 P.2d 836 (1983) (attorney–client privilege not applicable when defendant challenges validity of guilty plea). Moreover, even if the attorney–client privilege were applicable, Garcia himself could have waived it to show that counsel's reasons for rejecting the defenses were unsound.

to appoint an expert at the hearing to withdraw his plea. Thus, he argues, the case should be remanded for an evidentiary hearing on prejudice where he would have the benefit of the testimony of an expert on the issue of his mental state at the time the crime was committed.

Garcia relies on federal habeas corpus cases to support his argument that he is entitled to a remand for an evidentiary hearing. *See, e.g., Hooper v. Garraghty,* 845 F.2d 471 (4th Cir.), *cert. denied,* 488 U.S. 843, 102 L. Ed. 2d 91, 109 S. Ct. 117 (1988); *Byrne v. Butler,* 845 F.2d 501 (5th Cir.), *cert. denied,* 487 U.S. 1242, 101 L. Ed. 2d 949, 108 S. Ct. 2918 (1988). Those cases, however, stand only for the proposition that an evidentiary hearing is required if the habeas applicant did not receive a full and fair hearing in a state court. *Townsend v. Sain,* 372 U.S. 293, 312, 9 L. Ed. 2d 770, 83 S. Ct. 745 (1963). Moreover, the court in *Byrne v. Butler, supra,* specifically held that an evidentiary hearing to resolve a claim of ineffective assistance of counsel was not necessary because the existing record was adequate to dispose of the claim. *Byrne,* 845 F.2d at 512.[2]

Most importantly, Garcia's arguments overlook the fact that an evidentiary hearing on precisely this issue *was* held in his case. At that hearing, Garcia had a full and fair opportunity to make a record establishing (1) that there were mitigating circumstances which counsel did not bring to the prosecuting attorney's attention and (2) that his asserted cocaine psychosis and diminished capacity defenses likely would have changed the outcome of a trial. He did not do so.

---

[2]In *Byrne,* 845 F.2d at 512, the defendant argued that he received ineffective assistance of counsel because his attorneys failed to have him evaluated by a mental health professional, thus failing to discover evidence of his underlying mental disorder and to present that evidence at the guilt and sentencing phase of his trial. The court held that the defendant was required to demonstrate that his attorneys had some indication that mental impairment might be a viable defense. *Byrne,* 845 F.2d at 513. Since there was no indication in the record that a psychiatric evaluation was warranted, the defendant was not entitled to an evidentiary hearing on his claim for ineffective assistance of counsel. *Byrne,* 845 F.2d at 513.

■ Garcia's contention that he was denied a full and fair hearing because the trial court refused to appoint an expert to evaluate his mental condition is without merit. Both federal and state case law require a threshold factual showing by the defendant before the State is compelled to provide an expert. In *Ake v. Oklahoma,* 470 U.S. 68, 72, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985), the Supreme Court held that the State must provide access to a psychiatrist's assistance if an indigent defendant makes a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial. CrR 3.1(f)(1) allows an indigent defendant to obtain expert services necessary to an adequate defense. However, the determination of whether expert services are necessary to an adequate defense is within the trial court's discretion and will not be overturned absent an abuse of discretion. *State v. Melos,* 42 Wn. App. 638, 640, 713 P.2d 138, *review denied,* 105 Wn.2d 1021 (1986).[3]

Here, Garcia has not met the threshold requirement. In support of his motion for evaluation by a court–appointed psychiatrist, Garcia presented reports of prison personnel describing his disturbed conduct while in prison. The first of these reports is dated February 19, 1988, 2 days after the crime. The other reports submitted were made in May and June 1988.

■ These reports have no bearing on Garcia's mental condition at the time of the crime.[4] Garcia's behavior while

---

[3]CrR 3.1(f) and *Ake* apply whenever the defendant's mental condition is likely to be a significant factor at trial. *State v. Poulsen,* 45 Wn. App. 706, 710, 726 P.2d 1036 (1986). Since the defense of diminished capacity relates to the defendant's capacity to form the requisite mental state, they thus apply to the defense of diminished capacity. *Poulsen,* 45 Wn. App. at 710.

[4]In *Poulsen,* unlike the circumstances here, the defendant presented uncontradicted evidence of numerous head injuries and alcohol–related behavioral changes. The court held that this evidence constituted a clear showing that the defendant's mental condition would be a significant factor at trial. *Poulsen,* 45 Wn. App. at 711.

in prison had several possible causes, among them withdrawal from the drugs he had been taking and anger and depression caused by his imprisonment. Absent more specific evidence going to Garcia's mental condition during the relevant time periods, the trial court was well within its discretion in denying Garcia's motion for a court–appointed psychiatrist. *See Poulsen,* 45 Wn. App. at 710.

In conclusion, Garcia received a full and fair opportunity to establish prejudice from any ineffective assistance of counsel. He has failed to do so and is not now entitled to remand for another evidentiary hearing on the issue of prejudice.

Affirmed.

GROSSE, A.C.J., and WINSOR, J., concur.

Review denied at 115 Wn.2d 1010 (1990).