IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67745-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ALEXANDER SINCLAIR CAHILL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 3, 2013 |
| | ) | |

BECKER, J. — Appellant Alexander Cahill was found with another person's debit card. After five months in custody, he pleaded guilty to possession of stolen property in exchange for the State's recommendation that he be sentenced to two months and that he be released immediately. While awaiting sentencing, Cahill moved to withdraw his guilty plea on grounds of ineffective assistance of counsel. Because counsel did not conduct a reasonable investigation before advising Cahill to take the plea and failed to discover an available helpful witness, we conclude Cahill has shown both deficient performance and prejudice and is entitled to withdraw his plea.

Cahill was homeless at the time of these events. On August 7, 2010, Seattle police arrested him pursuant to a report that he had been seen trespassing at a vacant rental. He was found to be in possession of a debit card and an identification card belonging to other people.

The State initially charged Cahill with one count of identity theft in the second degree for possession of the debit card. An element of this crime is to possess another person's financial information "with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1). During the ensuing months, Cahill's assigned counsel, Erin Curtis, communicated with the prosecutor about the difficulty the State would have in proving that Cahill intended to use the debit card to commit a crime. Meanwhile, Cahill was in custody. He was held in the King County Jail or released on work release subject to conditions of release from August 27, 2010, to January 11, 2011, when the trial court entered his plea agreement.

The trial was set for January 18, 2011. At the omnibus hearing on January 7, 2011, the State declared its intention to amend the charge to one count of the lesser charge of possession of stolen property in the second degree. Based on Cahill's criminal history, the standard range for second degree possession of stolen property was two to five months in jail.

An element of the lesser charge is to possess stolen property "knowing that it has been stolen." RCW 9A.56.140(1). Proof of actual knowledge is not

required. It is enough if the defendant had knowledge of facts sufficient to put him on notice that the item was stolen. State v. Rockett, 6 Wn. App. 399, 402, 493 P.2d 321 (1972).

Before the omnibus hearing, the State offered to let Cahill plead guilty to the amended charge. Cahill considered it but decided against it. After the omnibus hearing, Curtis received a voice mail from Cahill. He had changed his mind and wanted to take the plea offer after all to expedite his release from confinement. According to Curtis, "At that point Mr. Cahill had been remanded back into secure confinement from work release, and given that he had an offer that would result in him having credit for time served, he indicated that he wanted to take the offer as soon as possible and wanted to be set on for sentencing as soon as possible."

On January 11, 2011, the State filed the amended information and the trial court entered the plea agreement. Before accepting the plea, the trial court engaged in the standard colloquy to ensure that Cahill understood the rights he would be waiving by pleading guilty. The court went over with Cahill the statement on the plea of guilty that he had signed. Cahill agreed it was a true statement where he admitted that he knowingly possessed someone else's debit card that he "knew had been stolen" and had on his person "for less than 24 hours, which resulted in it being withheld" from its owner.

In exchange for the plea, the State agreed not to file any other charges for the incident and recommended a sentence of two months in jail with credit for time served and that Cahill be released pending sentencing. Cahill was released from custody.

A month later, new counsel, Kenan Isitt, was appointed for Cahill so that Cahill could advance a claim of ineffective assistance of counsel as a basis for moving to withdraw his guilty plea. Cahill's motion to withdraw the plea was filed on May 5, 2011. Cahill claimed he had found the debit card on the side of the road at a bus stop in Burien and nearby business owners could confirm he frequented that location. He argued that under the circumstances, it was not reasonable to believe he knew the debit card was stolen and that Curtis had unreasonably failed to follow up on his request to conduct an investigation at the location where he found the card. The motion explained that Cahill chose to plead guilty so he could get out of jail immediately rather than continue the trial and spend more time in custody waiting for Curtis to investigate. By January 11, 2011, Cahill had already spent more time in custody than the high end of the standard range sentence for the crime he was charged with.

Isitt reported that it took him less than 15 minutes to locate a bamboo plant business Cahill had described to him. The owner told Isitt he had occasionally found wallets, licenses, mail, and debit cards strewn about the roadway in front of his business and he assumed thieves had just tossed these items out of the

4

window as they drove by. The store owner believed Cahill "might be one of several homeless people that he has occasionally observed in front of his business waiting for the bus." He thought Cahill's explanation of having found the debit card there was entirely plausible.

On September 16, 2011, the court heard testimony on the motion to withdraw the guilty plea. Cahill testified that he found the debit card at a bus stop in Burien and did not know it was stolen. He said he was intending to turn it in, perhaps at the Department of Motor Vehicles. He said he had asked Curtis for months to talk to store owners near the bus stop who could verify the plausibility of his account at least as to the location. Cahill said that when Curtis did not respond to his requests for this investigation, he took the plea offer because he felt otherwise he was "going to be left to rot in jail."

Curtis testified that she met with Cahill a handful of times and talked to him on the phone. Curtis said she explained to Cahill that he was no longer being charged with stealing and that the issue came down to whether or not a reasonable person in his circumstances would have or should have known the cards were stolen. "And so the investigation or the witness that he wanted me to talk to didn't necessarily help with that problem." Curtis explained that she intended to visit the scene before trial but as was typical in her office, the investigation would not occur until after the omnibus hearing. "We want to make

sure that because we only have a limited number of investigators that we are using them on the cases that are really going to go to trial."

On September 23, 2011, the court denied Cahill's motion to withdraw the plea. The court reviewed the standard for ineffective assistance and reasoned:

> While it is true that Ms. Curtis' delay perhaps delayed the ability of Mr. Cahill to know whether or not he would have a witness who would present him a defense, given the fact that Ms. Curtis in her professional judgment believed that any such witness who might be found would not provide a complete defense, and given Mr. Cahill made an independent decision to take credit for time served for the reason he wanted to get out of jail as soon as possible, I conclude that Mr. Cahill has not met the burden, and the motion to withdraw the guilty plea is denied.

The court noted that although it was unclear how much time Cahill had actually served, it appeared he had served more than five months. The court sentenced Cahill to two months with credit for time served.

## WITHDRAWAL OF GUILTY PLEA

Cahill argues the trial court should have granted his motion to withdraw the guilty plea because his original counsel failed to do any investigation, rendering his plea involuntary.[1] A trial court shall allow a defendant to withdraw his guilty plea if "necessary to correct a manifest injustice." CrR 4.2(f). Denial of

---

[1] Because Cahill's statement of additional grounds for review essentially reiterates his argument on direct appeal, we do not address it separately.

effective assistance of counsel is one way to establish a manifest injustice. State v. Wakefield, 130 Wn.2d 464, 472, 925 P.2d 183 (1996); State v. Taylor, 83 Wn.2d 594, 597, 521 P.2d 699 (1974).

A trial court's denial of a motion to withdraw a plea is generally reviewed for abuse of discretion. State v. Williams, 117 Wn. App. 390, 398, 71 P.3d 686 (2003), review denied, 151 Wn.2d 1011 (2004). But an ineffective assistance claim is reviewed de novo because it presents mixed questions of law and fact. State v. A.N.J., 168 Wn.2d 91, 109, 225 P.3d 956 (2010).

To establish ineffective assistance resulting in a guilty plea, the defendant must show (1) counsel's performance fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him. State v. Sandoval, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011).

To provide constitutionally adequate assistance, counsel must, at a minimum, conduct a reasonable investigation so that counsel can make informed decisions about how best to represent the client. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 866, 16 P.3d 610 (2001).

Cahill argues that Curtis was deficient by failing to investigate the scene where he claimed he found the debit card. Curtis and Cahill both understood that if the case went to trial, the State would have to prove Cahill knew the debit card was stolen. Cahill would have testified that he merely picked the card up off the side of the road near a bus stop and did not know it was stolen. Cahill told Curtis

that a business owner near the bus stop might be able to corroborate his description of the location, but she did not investigate this information.

The State argues that Curtis had no reason to believe there was a potential witness who could establish Cahill's innocence. Isitt, however, had no difficulty finding a witness. While the witness Isitt talked to would not have been able to provide a complete defense for Cahill, his testimony would have been helpful to support the credibility of Cahill, a homeless person.

The record reflects that Curtis intended to do an investigation at the scene but considered it impractical to do so until she was sure the case was actually going to go to trial. This puts the cart before the horse. If the result of an investigation is reasonably likely to help a defendant decide between pleading guilty and going to trial, the investigation should be done before that decision has to be made. This is particularly true for a defendant who is being held in custody for a crime likely to carry a short sentence. We conclude Curtis rendered deficient performance by failing to conduct a reasonable investigation.

The next question is whether the deficient performance prejudicially affected the outcome of the plea process. In the plea context, the prejudice prong requires a showing that but for counsel's errors, it is reasonably probable the defendant would not have pleaded guilty and would have insisted on going to trial. In re Pers. Restraint of Riley, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993).

Cahill contends Curtis's deficient performance prejudiced him by essentially forcing him to plead guilty to a crime despite his insistence that he did not know the debit card was stolen. Cahill testified that when Curtis did not respond to his requests for investigation, he took the plea offer because he felt otherwise he was "going to be left to rot in jail."

"The defendant must satisfy the court that there is a reasonable probability that, but for counsel's deficient performance, he or she would not have pleaded guilty and would have insisted on going to trial." State v. Garcia, 57 Wn. App. 927, 933, 791 P.2d 244, review denied, 155 Wn.2d 1010 (1990). Where the alleged deficiency is a failure to investigate, the determination of prejudice will typically depend on the likelihood that evidence counsel failed to discover would have led counsel to recommend rejecting the plea agreement. "'This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.'" Garcia, 57 Wn. App. at 933, quoting Hill v. Lockhart, 474 U.S. 52, 59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985).

The State argues that the potential witness testimony was too weak to affect the outcome of a trial. We disagree. The State's ability to prove the crime depended entirely on convincing the jury that Cahill kept the card in his possession while knowing it was stolen. A reasonable jury could have found that Cahill did not realize the card was stolen. The credibility of his version of events

9

would have been enhanced by a reputable witness corroborating Cahill's description of the location where he found the card and testifying that he had seen other wallets, mail, and cards discarded there.

The State further argues Cahill took the plea offer not because of the lack of investigation, but "because he was desperate to get out of jail, and had already served incarceration equivalent to the 5-month top-end of the standard sentencing range" for the charge of possession of stolen property. Cahill was justifiably anxious to be released. He had already served more time than he would likely serve if convicted at trial. This fact reinforces our conclusion that Cahill was prejudiced by the deficient performance. Curtis should have discovered the potential witness earlier instead of postponing investigation until the eve of trial. Had she done so, she would have been able to give Cahill a more informed evaluation of his chances at trial at a time when there was still a meaningful choice between going to trial and pleading guilty. As Cahill points out, because he had already served all or most of his likely sentence, he "had little if anything to lose by taking his chances with a jury."

We conclude there is a reasonable probability that, but for counsel's deficient performance, Cahill would not have pleaded guilty and would have insisted on going to trial. The motion to withdraw the plea should have been granted.

Reversed.

Becker, J.

WE CONCUR:

Leach, C. J.