IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77929-0-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JIMMIE EARL YORK, II, | |
| Appellant. | FILED: August 5, 2019 |

CHUN, J. — Jimmie York pleaded guilty to second degree assault-domestic violence, felony harassment-domestic violence, and assault in the fourth degree under an indivisible plea agreement. York later sought to withdraw his plea. The trial court denied York's motion and sentenced him based on the crimes. York appeals. We affirm his conviction and remand for the trial court to strike the DNA fee.

## I.
## BACKGROUND

On May 22, 2016, the Kent Police Department responded to a "physical domestic report." The victim, Tamiko Watts, reported that York, a former boyfriend and the father to her 11-year-old child, had attacked her. Watts reported that upon returning home from work, York attacked her and began to punch her in the face. Watts began to yell for help. York then put one hand around Watts's neck and squeezed while saying he would kill her.

On May 23, 2016, the State charged York with one count of felony harassment-domestic violence, one count of second-degree assault-domestic violence, and one count of resisting arrest.

Another incident occurred on August 30, 2016, in which York assaulted his attorney, Kenneth Harmell. This led to a charge of third-degree assault in a separate case.

On March 22, 2017, the State agreed to reduce York's charge of third-degree assault in the case involving his attorney to fourth-degree assault if he agreed to plead guilty to amended charges in the domestic violence case. York assented and the State agreed to drop the resisting arrest charge in the domestic violence case. That same day, York pleaded guilty in both cases. In the felony plea agreement, the parties agreed that the two negotiated guilty pleas would constitute one "indivisible agreement." The scoring form listed York's offender score as 10, which gave him a sentencing range of 63 to 84 months.

Also on March 22, 2017, the trial court determined that York entered into the plea agreement knowingly, intelligently, and voluntarily. The court accepted York's guilty plea.

On April 28, 2017, York indicated that he wanted to withdraw his plea. Shortly thereafter, on May 11, 2017, the court held a hearing in which it ordered the Department of Public Defenders (DPD) to appoint a new attorney to represent York on his motion to withdraw his plea, as it anticipated that his former attorney might have to testify as a witness.

On January 8, 2018, York's new attorney filed a Memorandum in Support of Motion to Withdraw Guilty Plea in which he made two arguments. First, he asserted that the parties were mutually mistaken regarding the offender score calculation because the "agreement neglected the application of the same criminal conduct doctrine of RCW 9.94A.589(1)(a)."[1] York's attorney maintained that the application of same criminal conduct would count the felony assault and harassment convictions as one crime for the purpose of his offender score, and therefore would lower his sentencing range. Second, he argued that York's prior attorney's failure to mount a defense of diminished capacity constituted ineffective assistance of counsel.[2]

The trial court held a hearing on York's motion to withdraw on January 12, 2018. The court found that York knowingly, intelligently, and voluntarily pleaded guilty and that no legal error existed because the parties had agreed to the offender score. The court also rejected York's ineffective assistance of counsel claim. The court denied York's motion to withdraw the plea and proceeded to sentence him to 75 months imprisonment. The court also imposed a $100 DNA fee as part of the Judgment and Sentence.

---

[1] RCW 9.94A.589(1)(a) provides:

> (1)(a) Except as provided in (b), (c), or (d) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535. "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.

[2] York does not make this argument on appeal.

York appeals.

## II.
## ANALYSIS

### A. Plea Withdrawal

York claims the trial court erred in denying his motion to withdraw his plea. He asserts that because he was unaware of the sentencing consequences pertaining to same criminal conduct, his plea was not knowing, intelligent, and voluntary. The State argues that York waived same criminal conduct when he agreed to the offender score and resulting sentencing guidelines listed in his plea agreement. We agree with the State.

Generally, a trial court's decision to deny a motion for plea withdrawal "is reviewed for abuse of discretion." State v. Nitsch, 100 Wn. App. 512, 521, 997 P.2d 1000 (2000). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46–47, 940 P.2d 1362 (1997).

The trial court "shall not accept a plea of guilt, without first determining that it is made voluntarily, competently, and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d). "Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." In re Pers. Restraint of Isadore, 151 Wn.2d 294, 297, 88 P.3d 390 (2004).

A trial court should permit a defendant to withdraw their guilty plea when required to correct a manifest injustice. CrR 4.2(f). A manifest injustice arises where the defendant received ineffective assistance of counsel, the defendant or

4

a person authorized by the defendant to ratify the plea failed to do so, the plea was involuntary, or the prosecution breached the plea agreement. State v. Wakefield, 130 Wn.2d 464, 472, 925 P.2d 183 (1996).

When a defendant agrees to an offender score in a plea agreement, they cannot later change the score by arguing same criminal conduct because their offender score "range can be arrived at only by calculating the score, and thus [their] explicit statement of the range is inescapably an implicit assertion of [their] score, and also an implicit assertion that [their] crimes did not constitute the same criminal conduct." Nitsch, 100 Wn.2d App. at 522.

Here, York entered into a plea agreement in which he agreed to the calculation of his offender score that counted his assault and harassment offenses separately. York signed the felony plea agreement, which stated he agreed that the offender score listed was accurate and complete. Further, during the plea hearing, both the State and trial judge asked whether York agreed to the offender score and resulting sentencing range listed in the plea agreement. York responded "yes" to both inquiries. Because York agreed to his offender score and sentencing range, he waived the matter of same criminal conduct. In light of the foregoing, the trial court did not abuse its discretion by refusing to withdraw his plea for failure to consider same criminal conduct.

B. Ineffective Assistance of Counsel

York asserts he received ineffective assistance of counsel because his attorney failed to advise him on same criminal conduct. York says this led to his failure to understand the consequences of his guilty plea. The State counters

5

that defense counsel's testimony does not support York's assertion, and that York failed to demonstrate prejudice. We determine that York's ineffective assistance of counsel claim fails.

We review de novo ineffective assistance of counsel claims. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).

A defendant may withdraw their guilty plea for manifest injustice if they received ineffective assistance of counsel. Wakefield, 130 Wn.2d at 472. A defendant's plea agreement cannot waive the right to effective assistance of counsel. In re Pers. Restraint of Schorr, 191 Wn.2d 315, 321, 422 P.3d 451 (2018).

"In a plea bargaining context, 'effective assistance of counsel' merely requires that counsel 'actually and substantially [assist their] client in deciding whether to plead guilty.'" State v. Osborne, 102 Wn.2d 87, 99, 684 P.2d 683 (1984) (quoting State v. Cameron, 30 Wn. App. 229, 232, 633 P.2d 901 (1981)). To prove ineffective assistance of counsel, the appellant must demonstrate both that the defense counsel provided deficient representation and that such deficient representation prejudiced them. Estes, 188 Wn.2d at 457–58.

When considering prejudice to the defendant, we examine whether "there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). In the context of a plea agreement, the appellant must show a reasonable probability that but for their counsel's deficient representation, they would not have pleaded guilty. State v. Garcia, 57 Wn. App.

6

927, 933, 791 P.2d 244 (1990). "Generally, this is shown by demonstrating to the court some legal or factual matter which was not discovered by counsel or conveyed to the defendant himself [or herself] before entry of the plea of guilty." Garcia, 57 Wn. App. at 933.

Even assuming York's counsel was deficient, his claim fails because he cannot demonstrate prejudice. In the plea agreement, York agreed to an offender score of 9+. Though he argues that his offender score would have been lower had his attorney raised same criminal conduct, this is not necessarily true. As the State points out, had York not agreed to an offender score of 9+, it may have refused to agree to the reduced charges that it offered in the plea agreement. Furthermore, without the plea agreement, the State may have sought an exceptional sentence. Thus, raising same criminal conduct would not have automatically resulted in a lower offender score as York suggests. Accordingly, he does not show that he would not have pled guilty had his attorney raised the issue of same criminal conduct. York's ineffective assistance of counsel claim fails.

C. Failure to Voluntarily Plea: Domestic Violence

York asserts his plea was not knowing, intelligent, and voluntary because he did not understand and admit to conduct essential to the domestic violence charges. The State insists the record does not support York's argument, and that York waived the issue because he did not raise the issue below. Assuming the issue is not waived, we determine the record demonstrates York knowingly, intelligently, and voluntarily pleaded guilty to the special findings of domestic

7

violence.

Determining the voluntariness of a plea agreement requires consideration of all of the relevant circumstances surrounding the plea. State v. Williams, 117 Wn. App. 390, 398, 71 P.3d 686 (2003). "When the judge goes on to inquire orally of the defendant and satisfies himself [or herself] on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable." State v. Perez, 33 Wn. App 258, 262, 654 P.2d 708 (1982).

The record shows York possessed the requisite information regarding domestic violence to show he understood the charges during the plea process. The First Amended Information incorporated into York's Statement of Defendant of Plea of Guilty identified both the statute defining domestic violence, as well as the charges of domestic violence itself. The trial court asked York whether he read the "Statements of Defendants on Plea of Guilty," if he went through them "paragraph by paragraph" with his lawyer, and if his lawyer answered any questions he had regarding the forms. York answered affirmatively to all three questions. During the plea colloquy between the prosecutor and York, the prosecutor asked him if he understood the elements of both felony counts of "assault in the second degree, domestic violence, and felony harassment, domestic violence," to which York answered "yes."

The Felony Plea Agreement, as signed by York, also notes the special findings of domestic violence. York further acknowledged the charge of domestic violence during his competency evaluation. While York's written factual

explanation may not state his relationship to the victim, the record clearly indicates that the victim and York previously had a two-year dating relationship and share a child in common, meeting the definitional requirement of "family or household members."[3] RCW 10.99.020.

The instances above establish York reviewed and understood the domestic violence charges and their consequences. As a result, he fails to demonstrate that he did not knowingly intelligently, and voluntarily understand the domestic violence charges and their consequences. We reject York's claim.

D. Statement of Additional Grounds for Review

In his Statement of Additional Grounds for Review, York claims the court and the prosecution violated his right to a speedy trial due to a series of continuances.[4] We conclude that by pleading guilty, York waived his ability to challenge the loss of his right to a speedy trial.

This court has held previously that a voluntary guilty plea waives the right to challenge any CrR 3.3 speedy trial right. State v. Wilson, 25 Wn. App. 891, 895, 611 P.2d 1312 (1980); State v. Phelps, 113 Wn. App. 347, 352, 57 P.3d 624 (2002). As part of York's plea agreement, he agreed to give up his right to a speedy trial.

---

[3] "Family or household members" means . . . persons who have a child in common regardless of whether they have been married or have lived together at any time, . . . adult persons who are presently residing together or who have resided together in the past, persons sixteen years of age or older who are presently residing together or who have resided together in the past and who have or have had a dating relationship.
RCW 10.99.020(3).

[4] York also asserts in his Statement of Additional Grounds for Review that his counsel provided ineffective assistance by failing to address the Sentencing Reform Act in regards to same criminal conduct, which this opinion addresses above.

Because York's plea agreement was voluntary, we conclude that he cannot challenge it based on his right to a speedy trial.

E. Request to Strike DNA Fee

Both parties request remand for the trial court to strike the $100 DNA fee because the State previously collected York's DNA due to prior convictions. A legislative amendment effective June 7, 2018, made a $100 DNA collection fee discretionary where "the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541. Further, the amendment prohibits courts from imposing discretionary costs on indigent defendants. RCW 10.01.160. These amendments apply prospectively to York due to his pending direct appeal at the time of the amendment's enactment. State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). As a result, we remand for the trial court to strike the DNA fee from the Judgment and Sentence.

Affirmed. Remanded to strike the DNA collection fee.

_Chun, J._

WE CONCUR:

_Leach, J_    _Appelwick, C.J._

10