# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of | ) ) ) ) ) | No. 80370-1-I |
| JAARSO AHMED ABDI, | ) ) ) | ORDER DENYING MOTION FOR RECONSIDERATION, WITHDRAWING & |
| Petitioner. | ) ) ) | SUBSTITUTING OPINION |

Petitioner filed a motion for reconsideration of the court's September 21, 2020 opinion. Respondent filed an answer at the court's request. The court has considered the motion and determined that reconsideration should be denied but that the opinion filed on September 21, 2020 should be withdrawn and an unpublished substitute opinion filed. Now, therefore, it is hereby

ORDERED that petitioner's motion for reconsideration is denied. It is further

ORDERED that the opinion of this court filed September 21, 2020 is withdrawn and an unpublished substitute opinion be filed.

_____ Verellen, C.J.

_____ Bowman, J.

_____ Appelwick, J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) ) | No. 80370-1-I |
| JAARSO AHMED ABDI, | ) ) | UNPUBLISHED OPINION |
| Petitioner. | ) ) ) | |

VERELLEN, J. — In his personal restraint petition, Jaarso Abdi asserts his counsel was ineffective at trial for failing to timely recognize that discovery from the prosecutor included exculpatory statements by one victim to police and for failing to present and properly argue that evidence at trial. But his counsel discovered the exculpatory statements before trial, and the victim minimized the role of Abdi in her trial testimony. Whether to cross-examine the victim about the statements or seek to introduce them through another witness was a legitimate tactical decision. Abdi also does not establish his counsel's approach in opening statement or closing argument was prejudicial.

Abdi contends his attorney was ineffective at sentencing for failing to investigate, present, and argue mitigating circumstances of his youth. Abdi was 23 years old at the time of the charged conduct, and he had a traumatic and violent

1

childhood. But he does not establish he was prejudiced by his counsel's approach to sentencing.

Because he does not establish ineffective assistance of counsel, we deny his personal restraint petition.

FACTS

Jaarso Abdi was convicted of attempted first degree robbery and first degree unlawful possession of a firearm in March 2015. This court affirmed his judgment and sentence on direct appeal. Abdi timely filed his personal restraint petition after the mandate issued.

The basic facts leading to Abdi's convictions are set out in his direct appeal. Mohamed Ali, his wife, Halimo Dalmar, and their seven children were at home. Abdi and two other men, Said and Forbes, knocked on the door and loudly demanded money. The family refused to open the door. The three men went to a nearby car, removed weapons from the trunk, and returned to the family's apartment. They again banged on the door while demanding money. When the family did not open the door, the three men went around the house and attacked a nearby neighbor.

Dalmar, thinking the coast was clear, left the apartment to drive her son Mustafe to work. When Dalmar and Mustafe were in the car, the men approached and again demanded money. Forbes pointed a gun at the window of the family home where the children were. A neighbor saw a man holding a gun and called 911. Seattle police arrived in minutes. They saw the three suspects matching the

descriptions given on the 911 call. The suspects fled. Abdi and Said were quickly caught and taken into custody. Forbes escaped.

Witnesses saw the men toss something into a bin, where the police later retrieved two guns. Ali and Dalmar both identified Abdi and Said in separate lineups and explained their roles in the crimes. They also identified the three men in court as the attackers.

The jury convicted Abdi and Said of first degree attempted robbery against Dalmar and first degree unlawful possession of a firearm. The jury acquitted Said of the second count of first degree attempted robbery against Ali but could not reach a decision as to Abdi on that count.

The court sentenced Abdi to a standard range sentence of 152 months in prison.

## ANALYSIS

A petitioner alleging constitutional error in their personal restraint petition bears the "threshold, prima facie burden of showing by a preponderance of the evidence that [they were] actually and substantially prejudiced by the alleged error."[1] The petitioner must show that the outcome of their trial "would more likely than not have been different had the alleged error not occurred."[2]

---

[1] In re Pers. Restraint of Meippen, 193 Wn.2d 310, 315, 440 P.3d 978 (2019).
[2] Id. at 316.

A defendant has a constitutional right to effective assistance of counsel.[3]  Our analysis of a claim of ineffective assistance of counsel begins with a strong presumption that counsel was effective.[4]  The claimant bears the burden of demonstrating that counsel's assistance was ineffective.[5]  The claimant must show that counsel's conduct fell below a professional standard of reasonableness and that but for counsel's unprofessional conduct, there is a reasonable probability the outcome at trial would have been different.[6]  If either of these prongs is not met, the claim fails.[7]

A legitimate tactical decision cannot be the basis of an ineffective assistance claim.[8]  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[9]  Therefore, we make every effort to "eliminate the distorting effects of hindsight" and evaluate counsel's performance from counsel's perspective at the time.[10]

---

[3] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

[4] Strickland, 466 U.S. at 690; McFarland, 127 Wn.2d at 335.

[5] McFarland, 127 Wn.2d at 337.

[6] State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting Strickland, 466 U.S. at 687).

[7] State v. Garcia, 57 Wn. App. 927, 932, 791 P.2d 244 (1990).

[8] State v. Alvarado, 89 Wn. App. 543, 548, 949 P.2d 831 (1998).

[9] Strickland, 466 U.S. at 689.

[10] Id.

Prejudice is not established merely by showing that an error by counsel had some conceivable effect on the outcome of the proceeding.[11] The party claiming ineffective assistance must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[12]

<u>Failure to Present Exculpatory Evidence</u>

In an October 2014 pretrial defense motion, counsel for Abdi asserted she had not been provided discovery of a police report recounting that Dalmar disclosed to Abdi and Said's parents that they "had done nothing to her," and that Forbes was "the only one that had a gun."[13] When the detective asked Dalmar why she had changed her story, she responded that she hadn't changed her story and had always maintained that Forbes "was the only one that did anything to her and the only one that had a gun."[14]

After comparing notes with the prosecutor during a recess of the November 19, 2014 hearing, counsel for Abdi acknowledged she had been provided that portion of the police report in February of 2014.

In her opening statement on December 10, 2014, Abdi's counsel told the jury, "[Y]ou're going to hear from Ms. Halimo Dalmar that she tells the detectives and

---

[11] <u>Id.</u> at 693.

[12] <u>Id.</u> at 694.

[13] PRP, Ex. D at 25.

[14] <u>Id.</u>

officers in this case in an interview that Mr. Abdi absolutely did nothing to her whatsoever. She's going to tell you that herself."[15]

During her direct examination at trial, Dalmar emphasized Forbes's actions. She testified Forbes was one of two men knocking and kicking at the door and demanding money, Forbes was the only one she saw with a gun, and he pointed that gun at her house. She minimized the roles of Abdi and Said. Abdi was with Forbes on the porch. Said and Abdi were with Forbes at the car. She noted that Said "only came towards the side of my [car] window, he did not even use his hands, and he ha[s] not done anything to me."[16] "He came to my car, but he did not physically take anything from me. None of these guys took anything from me. . . . [T]hey were all talking. I cannot identify which one was saying what. They were saying, 'Give me money. Give me money.'"[17]

On cross-examination, Abdi's counsel did not ask any questions of Dalmar about her statements to detectives.

In closing argument, Abdi's counsel focused on accomplice liability and Abdi's limited role. She noted, "[W]hat you heard from the evidence is that Mr. Abdi did not have a gun, that he did not threaten anybody,"[18] and "what [Dalmar] said is that Mr.

---

[15] Report of Proceedings (RP) (Dec. 10, 2014) at 1349.

[16] RP (Dec. 18, 2014) at 2264.

[17] Id. at 2265.

[18] RP (Jan. 12, 2015) at 2920.

Abdi did absolutely nothing to her.  She said that one person had a gun, and that was

Mr. Forbes."[19]  Later in her argument, she added:

> [W]hat was clear is that Mr. Abdi did not have a gun at any time. . . .
> [The daughter] testified, and I asked her "Was Mr. Abdi holding a gun?,"
> her answer was unequivocally no, he was not. . . . [W]hen I asked
> [Dalmar] did Mr. Abdi have a gun, she said, "I did not see Mr. Abdi
> either with or near a visible gun."  That was her testimony.
> Unequivocally did not have a gun.  In fact, she said he didn't do
> anything.[20]

Defense counsel should be aware of the contents of discovery provided by the

State, but Abdi does not establish the timing of counsel's realization was of any

significance.  Days before jury selection and opening statements, Abdi's attorney was

aware of the police report with Dalmar's statements that neither Abdi nor Said had

done anything to her and that Forbes was the only one with a gun.  The essence of

Abdi's claim is counsel was ineffective for failing to present exculpatory evidence

either on cross-examination of Dalmar or through another witness.

What direction to take how hard to push on cross-examination are squarely

strategic trial decisions:

> Courts generally entrust cross-examination techniques, like other
> matters of trial strategy, to the professional discretion of counsel.  In
> assessing Petitioner's claim that his counsel did not effectively cross-
> examine a witness, we need not determine why trial counsel did not
> cross examine if that approach falls within the range of reasonable
> representation.  "In retrospect we might speculate as to whether
> another attorney could have more efficiently attacked the credibility
> of . . . witnesses. . . . The extent of cross-examination is something a

---

[19] Id. at 2922.

[20] Id. at 2937.

7

lawyer must decide quickly and in the heat of the conflict. This . . . is a matter of judgment and strategy."[21]

And in order to establish prejudice from deficient cross-examination, the petitioner must show a reasonable probability the testimony to be elicited would have overcome the evidence against him.[22]

Dalmar's statements to the detectives did not stand in stark contrast to her trial testimony. It was a matter of judgment and strategy whether to attempt to impeach by means of the limited differences between her direct testimony and her statement to the detectives. And further inquiry on cross-examination could have allowed the prosecutor on redirect to explore whether Dalmar's version of "not doing anything" to her was limited to not physically touching her or actually taking property from her.

And Abdi does not establish that admitting Dalmar's statements to the detectives probably would have overcome the weight of the evidence against him as multiple witnesses described his role in the attempted robbery, including his possession of a gun.[23]

Counsel's misstatement in closing about Dalmar's testimony is troubling and could have undercut her credibility with the jury, but it is clear that the focus of her

---

[21] In re Pers. Restraint of Davis, 152 Wn.2d 647, 720, 101 P.3d 1 (2004) (alterations in original) (quoting State v. Stockman, 70 Wn.2d 941, 945, 425 P.2d 898 (1967)).

[22] Id.

[23] In the direct appeal, this court determined that sufficient evidence supported his conviction for possession of a firearm. State v. Abdi, No. 73263-3-I, slip op. at 6, (Wash. Ct. App. July 31, 2017) (unpublished) http://www.courts.wa.gov/opinions/pdf/732633.pdf.

argument was to emphasize the evidence that Abdi did not possess or use a gun in the context of accomplice liability. Even if deficient, Abdi does not establish a reasonable probability that a different tack in the opening statement or closing argument would have made a difference in the outcome of the trial.

Abdi does not establish ineffective assistance at trial.[24]

Failure to Present Mitigating Factor of Abdi's Youth

Abdi contends his counsel was ineffective at sentencing for failing to present evidence and advocate for a mitigated sentence based on Abdi's youth. Specifically, he argues he was 23 years of age at the time of the underlying crimes and scientific evidence supports that frontal lobe development continues into the mid-20s. Abdi also relies on his violent and traumatic experiences as an ethnic minority and refugee. He contends development of his brain architecture was disrupted by his migration to new countries and his childhood was filled with fear, violence, poverty, and hunger. His trial counsel acknowledges in her declaration that it did not occur to her to investigate or advocate for mitigation based on youthfulness.

But prejudice for ineffective assistance for failure to present a potential mitigating factor at sentencing requires a showing that the trial court would have been

---

[24] The four federal cases cited by Abdi regarding the failure to present exculpatory evidence are not persuasive. Anderson v. Butler, 858 F.2d 16 (1st Cir. 1988), Ouber v. Guarino, 293 F.3d 19 (1st Cir. 2002), Lord v. Wood, 184 F.3d 1083 (9th Cir. 1999), and Hart v. Gomez, 174 F.3d 1067 (9th Cir. 1999) all involved facts where the exculpatory evidence was compelling, as opposed to the limited exculpatory statements here.

inclined to accept such a factor.[25] Abdi contends the sentencing court's comments about youthfulness revealed the court would have been receptive to this mitigating factor. The court was aware of Abdi's age at the time of the crimes and his immigrant background, noting, "I also know that young men do stupid things and they grow up, and fortunately, they grow out of them. And their brains are immature at this age, but—and I'm a true believer in second chances and sometimes even third chances."[26]

But the court concluded Abdi had already been given multiple chances. His criminal history included seven adult felonies and two juvenile matters. The court was troubled by Abdi's prior convictions and his "absolute disregard for your fellow human being[s] and vulnerable people."[27] The court imposed the high end of the standard range, acknowledging that the only thing the sentence would do is protect the public for a period of time. The court acknowledged the science underlying concerns with youthfulness and brain maturity and still chose a high end sentence based on Abdi's troubling history of disregard for others. The record reveals the court was not inclined to mitigate Abdi's sentence on the basis of youthfulness.

Abdi does not establish ineffective assistance of counsel at sentencing.

---

[25] See State v. Knight, 176 Wn. App. 936, 958, 309 P.3d 776 (2013) (where there is no indication the trial court would have considered or imposed even a low end standard sentence, let alone an exceptional sentence downward, the defendant fails to establish he was prejudiced by counsel's failure to inform the court of the possibility of an exceptional sentence downward).

[26] RP (Mar. 18, 2015) at 3108.

[27] Id.

Impact of Recent Supreme Court Decisions

Abdi argues that the recent decisions In re Personal Restraint of Domingo-Cornelio,[28] and In re Personal Restraint of Ali[29] reveal that prejudice for purposes of a personal restraint petition related to consideration of youthfulness "simply requires some showing of willingness to consider the missed arguments or evidence pertaining to youth."[30]  He concludes, "Domingo-Cornelio makes clear that, where evidence and argument [of youthfulness] were lacking below, reviewing courts need not be concerned with whether the sentencing court signaled a willingness to impose a reduced sentence."[31]

But Abdi's arguments regarding prejudice are not compelling here.  The portions of Domingo-Cornelio and Ali regarding prejudice are both in the context of whether our Supreme Court's decision in State v. Houston-Sconiers[32] represented a significant change in the law in the sentencing of minors and whether the change was material to the defendant's sentence.  Under Houston-Sconiers, the court is required by the Eighth Amendment to the United States Constitution to consider the mitigating circumstances of youth when sentencing juveniles adjudicated as adults

---

[28] No. 97205-2, slip op. (Wash. Sept. 17, 2020), http://www.courts.wa.gov/opinions/pdf/972052.pdf.

[29] No. 95578-6, slip op. (Wash. Sept. 17, 2020), http://www.courts.wa.gov/opinions/pdf/955786.pdf.

[30] Petitioner's Motion for Reconsideration at 4.

[31] Id. at 5.

[32] 188 Wn.2d 1, 391 P.3d 409 (2017).

and must have absolute discretion to impose anything less than a standard adult sentence based on that youth.[33]

In Domingo-Cornelio, the defendant committed several crimes between the ages of 15 and 17 but, because of delayed reporting, was not sentenced until he was 20 years old.[34] The sentencing court did not indicate on the record whether it had considered the defendant's youth at the time he committed his crimes but imposed a standard range adult sentence.[35] Regarding prejudice, the court held "a petitioner establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration."[36] In Ali, the defendant committed a series of robberies when he was 16. He was charged and tried in adult court. Our Supreme Court noted the applicability of Houston-Sconiers to a juvenile tried as an adult and recognized "Ali has demonstrated actual and substantial prejudice. His sentencing judge was presented with, and considered, testimony and evidence regarding the mitigating factors of Ali's youthfulness, but she found that she lacked the discretion to impose an exceptional sentence downward based on those mitigating factors."[37]

---

[33] Id. at 19, 21.

[34] Domingo-Cornelio, slip op. at 2.

[35] Id. at 3-4.

[36] Id. at 12 (emphasis added).

[37] Ali, No. 95578-6, slip op. at 25.

Unlike <u>Domingo-Cornelio</u> and <u>Ali</u>, Abdi was not a juvenile tried as an adult. He was 23 when the crimes were committed. The discussion of prejudice in <u>Domingo-Cornelio</u> and <u>Ali</u> in the context of Houston-Sconiers has no application here.

Abdi suggests that the court's general openness to the circumstances of youth at his sentencing was an adequate showing of prejudice. But in order to satisfy the prejudice prong of ineffective assistance, he was required to show a reasonable probability that the outcome would have been different.[38] In order to establish actual and substantial prejudice for purposes of a personal restraint petition, he was required to establish the outcome would more likely than not have been different.[39] Abdi does not satisfy the prejudice requirements.

We deny Abdi's petition.

_____ Verellen, J

WE CONCUR:

_____ Brummer, J      _____ Appelwick, J.

---

[38] <u>Grier</u>, 171 Wn.2d at 32-33 (quoting <u>Strickland</u>, 466 U.S. at 687).
[39] <u>Meippen</u>, 193 Wn.2d at 316.

13